**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| NCS MULTISTAGE INC., § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO. 6:20-cv-00622-ADA |
| § | |
| vs. § | |
| § | |
| TCO AS § | |
| TCO PRODUCTS INC. § | |
| ARSENAL INC., § | |
| § | |
| Defendant. § | |

**PLAINTIFF NCS'S OPPOSED MOTION FOR LEAVE TO
EFFECT ALTERNATIVE SERVICE ON DEFENDANT TCO AS**

Pursuant to Fed. R. Civ. P. 4(f)(3), Plaintiff NCS Multistage Inc. ("NCS") respectfully seeks leave to serve the summons and its Complaint on Defendant TCO AS ("TCO Norway") through its U.S. Counsel, the Polsinelli Firm.

TCO Norway insists that NCS serve it process under the Hague Convention, even though:

- TCO Norway has been aware of the allegations in the Complaint since December 2019, when NCS sent its Norwegian CEO a notice of patent infringement;

- TCO Norway's CEO traveled from Norway to Texas to negotiate an early resolution;

- TCO Norway is the parent company of Defendant TCO Products Inc. ("TCO US"), who has responded to the Complaint and shares the same executives with TCO Norway;

- TCO Norway and TCO US are represented by the same counsel in this suit, the Polsinelli Law Firm;

- TCO Norway filed a Post-Grant Review petition with the USPTO on August 5, 2020, obviously in response to this suit which was filed a month earlier;

- TCO Norway appeared in this case by filing a declaration in this lawsuit in support of venue and jurisdiction arguments it intends to make in a motion to dismiss once it is

served; and

- TCO Norway again appeared in this case by filing a motion to strike NCS's request for a CMC.

TCO Norway undeniably has due process notice of this case and is more than ready to respond through its US counsel, including with the venue and jurisdiction arguments it has clearly already developed. The only feasible reason it is insisting on Hague service at this point is to delay the entire case and keep this Court from scheduling a CMC, including to delay the case in favor of TCO Norway's PGR filing. The Court should not tolerate this. This Court has the power to order service on TCO Norway's U.S. counsel under the Federal Rules of Civil Procedure and this is certainly warranted here. Doing so would greatly promote judicial economy, as this case could expeditiously move towards a CMC and a scheduling order as opposed to several months of delay caused by waiting for service under the Hague[1] followed by a battle on venue and jurisdiction. Furthermore, NCS has filed a parallel suit in this Court asserting the same patent against Nine Energy Services, where a Scheduling Order has been entered, Markman is set for January 14, 2021, and trial is set for October 2021. If this case progresses more quickly to a CMC, issues like claim construction and discovery could be consolidated. Finally, as both TCO Norway and TCO US are contesting venue and jurisdiction and the issues overlap, it would be more efficient to handle their objections together.

Accordingly, NCS respectfully requests the Court grant it leave to serve TCO Norway through its US counsel, the Polsinelli Firm.

I.  **BACKGROUND**

NCS filed this patent infringement lawsuit against TCO Norway, TCO US, and Arsenal

---

[1] It can take up 3-5 months to complete service under the Hague in Norway, which could delay the CMC to next year. *See* https://www.hcch.net/en/states/authorities/details3/?aid=246.

Inc. ("Arsenal") on July 9, 2020.  Dkt. 1.  NCS's Complaint alleges that TCO Norway is a manufacturer and importer of equipment for the TDP-PO (Pump Open – Casing and Tubing Floatation Device) (hereinafter the "Accused Product").  TCO Norway ships the equipment for the Accused Product from Norway to TCO US, its subsidiary in Houston, Texas, who then markets and sells the device in the US, including in the WDTX.  Dkt. 1 at ¶ 8.  Co-defendant Arsenal is one of TCO Norway's resellers of the Accused Product and also sells the device in the WDTX.  *Id.* at ¶ 11.

Since December 2019, TCO Norway and TCO US have been aware of NCS's asserted '445 Patent and its allegations of infringement.  On December 17, 2019, NCS sent TCO Norway's CEO in Norway a letter stating that NCS believed the Accused Product infringed the claims of the '445 Patent and included a claim chart.  *See* **Exhibit A**.  Over the course of seven months, the parties attempted to negotiate an early resolution to avoid litigation.  *Id.*; Dkt. 1.  In fact, TCO Norway's CEO, Nils-Petter Sivertsen, flew to Katy, Texas to meet with NCS executives at TCO US's facility.  In June 2020, TCO Norway and TCO US retained the Polsinelli Law Firm to negotiate with NCS's counsel.  *See* **Exhibit B**.  The Polsinelli firm represents both TCO Norway and TCO US in this case.  Ultimately, the discussions did not resolve the parties' issues and NCS was forced to file suit against TCO Norway, TCO US, and Arsenal.  Dkt. 1.

After filing its Complaint, NCS asked the Polsinelli Firm to accept service for both TCO US and TCO Norway, so NCS could avoid unnecessary expenses and delays under the Hague Convention.  *See* **Exhibit C** at 22-23.  TCO Norway said it would waive service under the Hague if NCS agreed that both TCO Norway and TCO US would be given 90-days to respond to the Complaint.  *Id.* at 18.  NCS informed TCO Norway that it did not believe such a lengthy

extension was reasonable, given that the parties had been aware of the allegations in the Complaint for seven months. But TCO Norway insisted on 90 days to respond for the TCO defendants. Not wanting to delay the case any further, NCS served TCO US and Arsenal on July 15, 2020 and began initiating service on TCO Norway through the Hague. Dkts. 10, 11.

Shortly after, NCS asked TCO Norway if it would waive translation of the summons and Complaint into Norwegian. *Id.* It was obvious TCO completely understood English. Rather than agree to that simple request, TCO Norway said it would agree only if NCS granted TCO US and Arsenal a 30-day extension to respond to the Complaint. *Id.* at 16. NCS agreed to the extension to avoid the translation costs. *Id.* at 1. NCS initiated service on TCO Norway through the Hague shortly thereafter, and the request to effect service was received by Norway's Central Authority on August 10, 2020. *See* **Exhibit D**.

On August 5, 2020, TCO Norway (but not TCO US) filed a Post-Grant Review proceeding in the USPTO challenging the validity of the patent asserted in this case.

On September 3, 2020, TCO US filed a motion to dismiss the Complaint for lack of venue. Dkt. 21. Inexplicably, its motion included a declaration filed not only on behalf of TCO US, but also on behalf of TCO Norway to support the jurisdictional arguments TCO Norway intends to make once it accepts service under the Hague. Dkt. 21-1 at ¶ 2.

Because TCO US and Arsenal filed responses to the Complaint, and TCO Norway filed a declaration showing that it is already litigating the case, NCS filed its Notice of Readiness for a CMC on September 4, 2020. Dkt. 23. TCO Norway and TCO US filed a Motion to Strike NCS's notice. Dkt. 24. Ultimately, the Court declined to schedule the CMC because TCO Norway has not been served. Dkt. 26.

On September 12, NCS's and TCO Norway's counsel met and conferred on this Motion.

*See* **Exhibit E**. NCS again requested TCO Norway accept service via the Polsinelli firm and negotiate a reasonable response and briefing schedule in light of the 60 days of time that has already passed since the filing of this suit. **Exhibit F** at 3. TCO Norway rejected this offer and again said it would waive service if it is given 90 more days to respond. *Id.* at 1.

## II. LEGAL STANDARDS

### a. Federal Rules of Civil Procedure

Fed. R. Civ. P. 4(h) governs service of process on corporations, partnerships, or associations. Pursuant to Rule 4(h)(2), serving a domestic or foreign corporation, or a partnership or other unincorporated entity "at a place not within any judicial district of the United States" must be done "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

Under Rule 4(f), service on a foreign defendant must comply with one of three provisions. Fed. R. Civ. P. 4(f). Rule 4(f)(3) provides that the Court may authorize service on a foreign individual "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "Thus, so long as the method of service is not prohibited by international agreement, the Court has considerable discretion to authorize an alternative means of service." *See Terrestrial Comms LLC v. NEC Corp.*, Civ. Action No. 6:19-cv-00597-ADA, 2020 WL 3270832, at *5 (W.D. Tex. June 17, 2020) (J. Albright). And nothing in the Hague convention prohibits service upon a foreign defendant's U.S. counsel. *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 11-cv-02460-LHK, 2011 U.S. Dist. LEXIS 71269, at *44 (N.D. Cal. July 1, 2011). Furthermore, "a plaintiff does not have to attempt to effect service under Rule 4(f)(1) prior to requesting the authorization of an alternative method of service. *Id.* at *5-6.

Finally, as this Court has stated, courts have frequently cited delays in service and the

expense of service under the Hague Convention as supporting an order for alternative service under Rule 4(f)(3). *Affinity Labs of Tx., LLC v. Nissan N. Am. Inc.*, Civ. Action. No. 13-cv-369, 2014 U.S. Dist. LEXIS 185740, at *7-8 (W.D. Tex. July 2, 2014) (J. Albright).

### b. The Hague Convention

TCO Norway resides in Norway, which is subject to the Hague Convention. The Hague Convention is an international treaty governing the service abroad of foreign defendants. *Id*. "If alternative means to effectuate service exist, strict compliance with the service requirements under the Hague Convention is not always mandatory. *Id*. at *6-7. "The method of serving process is governed by the long-arm statute of the forum state." *Id*.

### c. Constitutional Due Process Requirements

If claims are brought the WDTX, "an alternative method of service of process is valid if it complies with Texas' long-arm statute…[which] does not require the transmittal of documents abroad when serving a foreign defendant." *Id*. Indeed, "[c]ourts have repeatedly interpreted the Texas long-arm statute 'to reach as far as the federal constitutional requirements of due process will allow.'" *Id*. (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *U-Anchor Adver. Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1997)). To satisfy federal due process, "the method of service must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). "Due process is satisfied when efforts at giving notice provide fundamental fairness by exhibiting a reasonable probability of actual notice." *Id*.

**III.     ARGUMENT**

NCS respectfully requests the Court authorize service on TCO Norway by serving its U.S. counsel, the Polsinelli Firm. The Polsinelli Firm represents both TCO Norway and TCO US, who has accepted service in this case. Service on the Polsinelli Firm is permitted under the Federal Rules of Civil Procedure so long as it comports with federal due process and is not prohibited by international agreement, which is the case here as the Hague Convention does not prohibit service on U.S. Counsel and such service complies with the Texas long-arm statute. *See id*. *5-8, *10-12; *Richmond Techs.*, 2011 U.S. Dist. LEXIS at *44. Further, as this Court has stated, "[d]istrict Courts routinely direct service on an international defendant's counsel under Rule 4(f)(3) even if the counsel has not been expressly authorized to accept service on the defendant's behalf." *Id*. at *10.

Given TCO Norway's past objections, NCS anticipates TCO Norway will argue that it is entitled to service under the Hague Convention to satisfy due process. But as explained above, that is not the law. TCO Norway is merely trying to delay this case by attempting to hide behind the Rules of Procedure. TCO Norway cannot reasonably claim a lack of notice given the substantial knowledge it has about this case and the fact that it is already litigating issues here. TCO Norway has known about NCS's allegations since December 2019 and is clearly ready to respond. TCO Norway and its subsidiary TCO US, who has responded to the Complaint, share the same executives. Its CEO in Norway has flown here for early resolution discussions and it is using the same U.S. law firm as TCO US. TCO Norway has filed a Post-Grant Review Proceeding against the asserted patent, and has filed two papers in this Court, including a declaration supporting venue and jurisdictional arguments it will file in a motion to dismiss after it accepts service. Dkt. 21-1 at ¶ 2; Dkt. 24. Any objection to service through the Polsinelli Firm

made by TCO Norway should be viewed as no more than "an attempt to further delay resolution of the lawsuits rather than as ensuring [TCO Norway's] appraisal of the pending suits," including to delay the case in favor of TCO Norway's PGR filing. *Terrestrial Comms LLC*, 2020 WL 3270832, at *5 (J. Albright) (finding that "this Court previously held that seeking to avoid unnecessary delay and expense in serving a foreign defendant through the Hague Convention is a valid reason to grant alternative service.").

Finally, granting this Motion will promote judicial economy for at least three reasons. First, under the Hague Convention, service in Norway, on average, takes about 3-5 months.[2] That means TCO Norway might not be served until January 2021, and then TCO Norway will respond with motions to dismiss for lack of venue and jurisdiction. In other words, the CMC and a scheduling order could feasibly be delayed until early 2021. That is facially unreasonable and prejudicial in light of TCO Norway's notice of this case, filing of its PGR, and activity in this lawsuit.

Second, NCS has filed suit in this Court against Nine Energy Services, Inc. for infringing the same patent. NCS's lawsuit against Nine Energy Services is well on its way, with a Scheduling Order in place, Markman set for January 2021, and trial set for October 2021. If TCO Norway is brought into this case, the Court can hold a CMC and set a scheduling order to consolidate issues between the cases, such as Markman and discovery.

Third, it would be more efficient to resolve TCO Norway and TCO US's venue and jurisdiction objections together, as they are inter-related. TCO Norway is the primary party in

---

[2] *See* https://www.hcch.net/en/states/authorities/details3/?aid=246.

this case, and the basis for which this Court is the proper venue for both TCO defendants.[3] Based on all of the publicly available information, NCS believes TCO Norway, the parent company, and TCO US, the subsidiary company, are acting as one corporate entity, such that venue proper as to TCO Norway is proper as to TCO US.[4] *See 3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) ("The courts have also held that piercing the corporate veil is appropriate in order to establish venue under the patent venue statutes."); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, (Fed. Cir. 2013) (treating corporate entities as one under the alter ego theory to find personal jurisdiction). TCO US has filed a motion to dismiss for improper venue, and TCO Norway has filed a premature declaration to support a future 12(b)(2) motion to dismiss for lack of personal jurisdiction and a 12(b)(3) motion to dismiss for improper venue. Dkt. 21; Dkt. 21-1 at ¶ 2. The Court has granted NCS venue discovery as to TCO US and TCO Norway, but TCO Norway objects to the discovery on grounds that it has not received service. As the venue/jurisdictional issues for both entities overlap, it would be more efficient to handle the 12(b) motion filed by TCO US and the 12(b) motion to be filed by TCO Norway together.

## IV. CONCLUSION

For the foregoing reasons, NCS respectfully requests the Court grant NCS leave to serve TCO Norway through the Polsinelli Firm.

---

[3] A patent infringement action against a foreign defendant is properly brought in any judicial district. *See In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) (reaffirming the long-standing alien-venue rule that aliens are not subject to the federal venue laws).

[4] Indeed, TCO US's declarant Steven Cramp stated in his declaration that he is the Managing Director of TCO US, while his LinkedIn page states he is the Managing Director of TCO Norway. Dkt. 21-1 at ¶ 2; *see also* **Exhibit G.**

Dated:  September 14, 2020

Respectfully submitted,

*/s/ Domingo M. LLagostera*
**Domingo M. LLagostera**
(*Attorney-in-charge*)
State Bar No. 24070157
Tel.: (713) 632-8682
Fax: (713) 228-6605
DLLagostera@BlankRome.com
**Russell T. Wong**
State Bar No. 21884235
RWong@blankrome.com
Tel.: (713) 632-8634
Fax: (713) 228-6605
717 Texas Avenue, Suite 1400
Houston, TX 77002

**ATTORNEYS FOR PLAINTIFF NCS MULTISTAGE INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on September 14, 2020 via the Court's CM/ECF system.

*/s/ Domingo M. LLagostera*
Doming M. LLagostera