**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC. | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:20-cv-00622-ADA |
| | § | |
| vs. | § | |
| | § | |
| TCO AS | § | |
| TCO PRODUCTS INC. | § | |
| ARSENAL INC. | § | |
| | § | |
| Defendant. | | |

**PLAINTIFF NCS'S RESPONSE TO DEFENDANT TCO AS
AND TCO PRODUCT INC.'S MOTION FOR PROTECTIVE
<u>ORDER AND STAY OF VENUE AND JURISDICTION DISCOVERY</u>**

Plaintiff NCS Multistage Inc. ("NCS") is doing everything it can to move this case forward, while TCO Norway and TCO US (collectively "TCO") are doing everything they can to delay it in favor of TCO Norway's Post-Grant Review Petition ("PGR"), this time by **refusing to provide NCS the targeted venue discovery that this Court has already ordered**.

The Court ordered TCO to produce a corporate witness for a 30(b)(6) deposition on venue topics that generally cover the relationship between TCO US and TCO Norway and their infringing activities and presence in the WDTX. *See* **Exhibit A** at 1-3. The Court reviewed and approved these topics as "not overbroad." *Id.* at 1. TCO recently designated Steven Cramp as its corporate witness on the Court-approved topics. That is not surprising as Cramp submitted a declaration to this Court supporting **both** TCO Norway's and TCO US's venue and jurisdiction arguments, and he publicizes he is an employee of TCO Norway. Dkt. 27-7.

NCS's deposition topics are targeted, relevant, and not overbroad given Cramp's declaration and because NCS contends venue is proper as to TCO US because TCO Norway and TCO US are one and the same. NCS only needs one half-day video-deposition of Cramp on the already approved venue topics and on his venue declaration. TCO's efforts to stop the Court-approved deposition are just another delay tactic, like TCO's efforts to delay the CMC until next year by insisting NCS serve TCO Norway under the Hague, presumably designed to stall this case in favor of TCO Norway's PGR petition. Accordingly, the Court should deny TCO's motion for protection and motion to stay discovery.

**I.      Relevant Background**

NCS's Complaint alleges that TCO Norway is a manufacturer and importer of equipment for the TDP-PO Device (hereinafter the "Accused Product"). TCO Norway ships the equipment for the Accused Product from Norway to TCO US, its subsidiary in Houston, instructs TCO US

1

on how to assemble the Accused Product, and then TCO US markets and sells the device in the US, including in the WDTX. Dkt. 1 at ¶ 8. Contrary to what TCO says, NCS alleges that TCO is indirectly infringing the asserted patent by inducement. Dkt. 1 at ¶ 25.

TCO Norway is in charge of TCO US's defense in this case. In December 2019, about seven months before this suit was filed, NCS notified TCO Norway of the asserted '445 Patent and its allegations of infringement. Dkt. 27-1. TCO's CEO, Nils-Petter Sivertsen, flew from Norway to Texas to meet with NCS executives for settlement discussions. TCO Norway later hired the Polsinelli Law Firm, who represents both TCO Norway and TCO US. Dkt. 27-2. TCO Norway (not TCO US) filed a Post-Grant Review Petition against the asserted patent shortly after this suit was filed. Although it has not accepted service, TCO Norway has served four papers in this lawsuit: (i) its declaration of Steven Cramp supporting **both** TCO US's and TCO Norway's venue and jurisdiction arguments (Dkt. 21-1); (ii) its Motion to Strike NCS's Notice of Readiness for a CMC (Dkt. 24); (iii) a Motion for Protection against the Court-ordered venue discovery (Dkt. 28); and (iv) its Objections and Responses to NCS's 30(b)(6) Deposition Notice.

On September 3, 2020, TCO US filed a motion to dismiss the Complaint for improper venue. Dkt. 21. Its motion included the declaration of Cramp filed not only on behalf of TCO US, but also on behalf of TCO Norway to support the venue and jurisdictional arguments it intends to make once it accepts service. Dkt. 21-1 at ¶ 2. On September 8, 2020, NCS asked TCO for venue discovery to respond to TCO US's motion to dismiss and sent it a list of proposed topics generally relating to the corporate relationship between TCO US and TCO Norway, and their infringing activities and presence in the WDTX. **Exhibit B** at 2-3. TCO responded that it would not grant NCS **any** venue discovery. *Id.* at 1. NCS then informed the Court that it required targeted venue discovery covering TCO's corporate structure and contacts

with the WDTX and that TCO refused to cooperate. **Exhibit A** at 4. The Court instructed the parties that it "will allow Plaintiff to conduct limited venue discovery" and that NCS's limits "appear to be appropriate." *Id*. at 3-4. In response, TCO provided the Court with NCS's list of deposition topics, arguing that they were overbroad. *Id*. at 2-3. The Court responded: "After reviewing the list of deposition topics, the Court believes that they are not overbroad." *Id*. at 1.

On September 10, NCS served TCO US and TCO Norway 30(b)(6) deposition notices with the Court-approved topics. **Exhibit C**. NCS served the same notice topics on both entities to ensure the corporate witness(es) could speak as to both TCO US and TCO Norway's activities. That concern was mooted when TCO designated Cramp as its witness on all topics. *See* **Exhibit D** at 1. On September 15, NCS served a personal deposition notice for Cramp, limited to his venue declaration, and informed TCO that the 30(b)(6) and 30(b)(1) depositions would be taken together on the same day. *Id*. TCO informed NCS that it would not put up Cramp for a deposition at all.

## II.   LEGAL STANDARDS

Jurisdictional discovery, such as venue discovery, "should only be denied where it is *impossible* that the discovery could add any significant facts that might bear on the jurisdictional determination. *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 2:17-cv-430, 2019 U.S. Dist. LEXIS, at *13 (E.D. Tex. May 22, 2019) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (internal quotations omitted) (emphasis in original). In line with courts' broad discretion and the liberal spirit of the Rules of Procedure, this Court "generally grants leave for the parties to conduct targeted discovery (including, but not limited to requests for production, interrogatories, and depositions) with regard to motions to transfer venue or motions to dismiss based on lack of jurisdiction." Dkt. 25 at 3; *Blitzsafe*, 2019 U.S. Dist. LEXIS, at *12.

3

## III. ARGUMENT

### a. TCO does not seek protection for Topics 1, 6, 9-12, 15, and 18.

TCO does not object to Topics 1, 6, 9-12, 15, and 18 in its Motion for Protection. The Court should order TCO to produce Cramp for these topics immediately.

### b. NCS's Court-approved deposition topics are relevant.

TCO's Motion asks this Court to deny NCS the targeted venue discovery it has already approved. As such, TCO's motion is really a motion for reconsideration, and it has failed to provide the legal authorities and bases to support such a motion. For that reason alone the motion should be denied. Should the Court disagree, TCO's motion should be denied for the following reasons:

#### (i) Topics 1-15: TCO Norway and TCO US's Corporate Relationship

Topics 1-15 pertain to the corporate relationship between TCO Norway and TCO US. *See* **Exhibit A**. These Topics are relevant as to venue for at least the following two reasons:

First, Cramp's declaration states he has "intimate knowledge of TCO AS's corporate structure" and includes statements pertaining to TCO Norway's corporate affiliation to TCO US (Dkt. 21-1 ¶¶ 4,11), TCO Norway's physical presence in the US as compared to TCO US (*Id.* ¶¶ 3, 5-6), TCO Norway's activities in the US with respect to the Accused Product as compared to TCO US (*Id.* ¶¶ 7-10), and TCO's control of the sales, marketing, and manufacturing of the Accused Product in the US (*Id.* at ¶ 11). Topics 1-15 are related to and intended to cross-examine these statements. TCO opened the door to these topics when it filed Cramp's declaration, cited Cramp's declaration in its Motion to Dismiss, and used it as a basis for which the Court should deny NCS the topics it has already approved. *See generally* Dkt. 21; Dkt. 21-1; Dkt. 28 at 7-8. NCS should be allowed to cross-examine Cramp on his out of court statements, particularly when they appear to contradict the public record, are ambiguous, and do not solve

4

the venue question. For example, his declaration states he is Managing Director of TCO US (Dkt. 21-1 at ¶ 2), but he advertises himself publicly as Managing Director of TCO Norway (Dkt. 27-7). His declaration also states that TCO Norway does not direct the sales of the Accused Product in the US (Dkt. 21-1 at ¶ 11), but as explained below, the public record shows that TCO Norway and TCO US lack corporate separateness. His declaration also carefully ignores NCS's allegation that TCO Norway is sending equipment into the US that is assembled into the Accused Product. *See generally* Dkt. 21-1. His declaration also does not address the activities and presence of employees or agents in the WDTX, where substantial sales and infringing uses occur. *Id.*; *In re Google LLC*, 949 F.3d 1338, 1344-45 (Fed. Cir. 2020).

Second, the corporate relationship between TCO Norway and TCO US is relevant to venue because NCS believes this Court can pierce the corporate veil for venue. Under Federal Circuit law, "piercing the corporate veil is appropriate in order to establish venue under the patent venue statutes." *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (citing *Leach Co. v. General Sani-Can Mfg. Co.*, 393 F.2d 183 (7th Cir. 1968) (finding that venue in a patent infringement case was proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation)). This law is still alive after *TC Heartland*. *See Voice Int'l, Inc. v. Oppenheiner Cine Rentals, LLC*, No. LA CV15-08830 JAK, 2019 WL 8810147, at *5 (C.D. Cal. Mar. 25, 2019) (recognizing that patent venue under alter ego theory is alive and well post-*TC Heartland*); *UCB Mfg. Ireland Ltd. et al. v. Mylan Techs., Inc.*, No. 17-322-LPS, 2017 WL 5985559, at *4 (D. Del. Dec. 1, 2017) (finding that *In re Cray*, which evaluated *TC Heartland*, did not disturb and actually supports the Federal Circuit's prior holding that venue may be proper as to one corporation by virtue of the acts of another).

NCS contends TCO Norway is the primary party in this case because it is the creator and

5

designer of the accused product, is importing to the US infringing equipment, and is controlling sales of that equipment throughout the WDTX, including by TCO US and reseller Arsenal Inc. Dkt. 1 at ¶ 11.  This District is the proper venue for TCO Norway because this Court has personal jurisdiction based on TCO Norway's contacts with Texas and the WDTX, and as a foreign defendant, TCO Norway is "wholly outside the operation of all the federal venue laws, general and special."  *See In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

Based on public information, NCS believes TCO Norway controls TCO US such that the two are acting as one corporate entity and venue proper as to TCO Norway is proper as to TCO US.  TCO was founded in Norway as TCO Norway.  Dkt. 21-1 ¶ 3.  The oneness of the two entities is exemplified by the fact that they have the same officers and Board of directors, all of whom appear to be in Norway.  **Exhibit E** at 1-3.  When NCS notified TCO of its Complaint for patent infringement in the US, TCO's CEO in Norway traveled to Houston to negotiate an early resolution with NCS.  Additionally, TCO US does not have a website; rather, TCO Norway controls one website for its entire organization.  *See e.g.,* **Exhibit E** at 4-5.  TCO's website refers to its US office as "North America," as opposed to TCO US.  *Id.* at 6.  Furthermore, while Steven Cramp claims he is the Managing Director for TCO US, his LinkedIn lists his employer as TCO Norway, and states he is the Managing Director for TCO – North America, not TCO US. Dkt. 27-7.  In fact, his LinkedIn profile doesn't even mention TCO US—it simply describes his role as managing US operations for TCO Norway.  *Id.*  Based on all of this information, NCS believes the TCO Defendants are acting as one corporation such that venue is proper as to TCO US because venue is proper as to TCO Norway.  NCS needs discovery under Topics 1-15 to obtain further information to pierce the corporate veil and respond to TCO US's motion to

dismiss.[1]

> (ii) Topics 13-14 and 16-18: TCO Norway and TCO US's Infringing Activities and Presence in Texas

Topics 13 and 16-18 pertain to TCO Norway and TCO US's activities in or contacts with Texas and the WDTX, its <u>involvement</u> in the manufacture and sale of the Accused Product, and its offices and employee/agent activity in this District. The topics related to TCO Norway's activities and presence in Texas are relevant to establish this Court is the proper venue as to TCO Norway, and thereby the proper venue as to TCO US. *In re HTC*, 889 F.3d at 1354. Separately, the topics related to TCO US's activities and presence in the WDTX are relevant to establish this Court is the proper venue under the patent venue statute as to TCO US, where "[a]ny civil action may be brought in the judicial district…where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. §1400(b).

TCO claims TCO Norway's and TCO US's <u>involvement</u> in the manufacture and sale of the Accused Product is not relevant to venue, but does not provide any basis for that argument and so it should be ignored. Dkt. 28 at 8. To establish venue, NCS must understand the defendants' <u>involvement</u> in the manufacture and sales of the Accused Product to understand how and where the parties are infringing, directly or indirectly.

TCO also claims topics 13-14 and 16-17 are not appropriate because they contradict

---

[1] TCO claims in its motion that NCS's complaint is devoid of fact allegations to support that TCO Norway and TCO US lack corporate separateness. Dkt. 28 at 7. That is not true. NCS alleges in its Complaint that venue is proper because (i) TCO Norway is manufacturing equipment in Norway, importing that equipment to TCO US so that TCO can sell the accused product in the WDTX, and TCO Norway "instructs TCO USA on how to assemble the infringing TDP-PO Floating Device in the Western District of Texas." Dkt. 1, ¶11. All of this pertains to TCO Norway's control over TCO US and their joint infringing activities in the US. Moreover, NCS is not required to prove its alter ego theory in the Complaint; that is the purpose of venue discovery and the right to respond to TCO's motion to dismiss.

sworn statements made by Cramp in his declaration. *Id.* Fact disputes do not simply cease when a party submits a self-serving declaration. NCS is entitled to cross-examine Cramp on his declaration, particularly where, as explained above, his declaration is ambiguous, contradicts the public record, and does not resolve all venue issues such as the activities and presence of employees and agents in the WDTX. *Supra* at 5-6.

### c. NCS is not harassing TCO; it's the other way around.

TCO alleges that the court-approved Topics are harassing because TCO Norway has not yet been served. Dkt. 28 at 9.[2] There are at least four problems with that argument.

First, Cramp's declaration makes numerous statements about TCO Norway's contacts with Texas, relationship to TCO US, and involvement in the manufacture and sale of the Accused Products in the US. TCO submitted that declaration in support of its motion and opened the door to these topics. NCS should be able to cross-examine TCO on those issues.

Second, as explained above, NCS needs a deposition on these topics in order to sufficiently respond to TCO US's Motion to Dismiss, including to support its alter ego theory.

Third, that TCO Norway has not been served is irrelevant. As explained in NCS's Motion for Leave to Effect Alternative Service (Dkt. 27), TCO Norway has done everything it can to delay the CMC and a Scheduling Order, presumably to favor its PGR petition. Dkt. 30. When NCS asked the Polsinelli firm to accept service on behalf of TCO Norway, TCO Norway insisted that NCS serve it under the Hague, or otherwise grant both TCO defendants 90 days to respond to the Complaint. Dkt. 27-3 at 22-23. NCS did not believe that was reasonable when TCO Norway has had notice of the case since December 2019, so it served TCO US and initiated

---

[2] TCO also accuses NCS of "forum-shopping." But his Court recognizes that plaintiff's right to select the most advantageous forum is fundamental to the judicial system. *VLSI Tech., LLC v. Intel Corp.*, 6:19-cv-256-ADA, 2019 U.S. Dist. LEXIS 155287 at *13 (W.D. Tex. Aug. 6, 2019).

service of TCO Norway under the Hague. TCO Norway of course has notice because TCO Norway and TCO US have the same officers and Board of Directors, all of whom appear to be in Norway. Then, when NCS asked TCO Norway to waive translation costs for Hague service, TCO Norway would not agree unless NCS gave TCO US and Arsenal, who is not represented by the Polsinelli firm, 30 days extra time to respond to the Complaint. *Id*. at 16-17. TCO Norway of course understands English because their Board of Directors and officers are also the Board and officers of TCO US. Nevertheless, NCS agreed to this extension. *Id*. at 1. Months later, NCS again requested TCO Norway accept service via the Polsinelli firm and negotiate a reasonable answer date given that 60 days had already passed since the filing of this suit. Dkt. 27-6 at 3. TCO Norway rejected this offer, insisting on a formal waiver of service to give TCO Norway 90 more days from service to respond, delaying the CMC until next year. *Id*. at 1.

Fourth, this Court can order discovery of TCO Norway independently because TCO Norway waived personal jurisdiction when it filed a Motion to Strike NCS's notice of readiness for a CMC and the present Motion for Protective Order. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switerland)*, 260 F.3d 453, 460-61 (5th Cir. 2001) (reiterating the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections."); *Mohr v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 164562, at *12 (W.D. Tex. July 27, 2010) (holding that where a party seeks affirmative relief from a court, it submits itself to the jurisdiction of that court). TCO Norway said it was making a "special appearance" for that motion, but there is no such thing in Federal Court. *See McCallum v. Camping World*, SA-19-cv-01021-OLG, 2020 U.S. Dist. LEXIS, at *2 (W.D. Tex. Apr. 21, 2020) (noting that special appearances were abolished decades ago in federal courts). TCO Norway should not be allowed to actively participate in this case yet claim this Court has

9

no jurisdiction to order discovery.

TCO also alleges the topics are harassing because the deposition notices it served on TCO Norway and TCO US are duplicative. Dkt. 28 at 10. This argument is meritless, as Cramp has been designated as the corporate witness for both TCO Defendants. **Exhibit D** at 1. NCS is merely seeking one half-day video deposition of Cramp on the Court-approved deposition topics.

### d. NCS's noticed deposition topics are not unduly burdensome

TCO claims they have been unduly burdened by the time and expense preparing responses and objections to the 18 deposition topics, from having to conduct meet and confers on so-called "duplicative discovery," and from having to file its motion for protection due to NCS's purported harassing litigation tactics. Dkt. 28 at 11. This is all nonsense. The Court already approved the Topics and the deposition, and NCS is entitled to the discovery.

### e. NCS's document request is not improper

TCO alleges NCS's notice is improper because it seeks documents sufficient to support TCO's responses to the Topics within 3-days of the deposition, and that purportedly runs afoul of the 30-day timetable under Rule 34. *Id.* at 11. But under Rule 34, a shorter time frame can be ordered by the Court. And NCS tried to negotiate a reasonable deposition and production date, but TCO refused to cooperate and said it would not offer a witness. Dkt. 27-6 at 1, 3.

### f. TCO's Request for a Stay Should be denied

TCO alternatively asks the Court to stay discovery pending a decision on NCS's Motion for Leave to Effect Alternative Service. Dkt. 28 at 11-13. This is just another delay tactic. There is no prejudice to TCO. NCS is seeking targeted discovery in one half-day video deposition, discovery this Court has authorized, and discovery that NCS needs to respond to TCO US's motion to dismiss. The Court should deny TCO's request for a stay.

For all the foregoing reasons, NCS respectfully requests the Court deny TCO's Motion for Protection and Stay, and order TCO to produce the targeted venue discovery this Court already approved.

| | |
|---|---|
| Dated:  September 24, 2020 | Respectfully submitted, |
| | */s/ Domingo M. LLagostera* <br> **Domingo M. LLagostera** <br> (*Attorney-in-charge*) <br> State Bar No. 24070157 <br> Tel.: (713) 632-8682 <br> Fax: (713) 228-6605 <br> DLLagostera@BlankRome.com <br> **Russell T. Wong** <br> State Bar No. 21884235 <br> RWong@blankrome.com <br> Tel.: (713) 632-8634 <br> Fax: (713) 228-6605 <br><br> 717 Texas Avenue, Suite 1400 <br> Houston, TX 77002 <br><br> **ATTORNEYS FOR PLAINTIFF NCS MULTISTAGE INC.** |

### CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record for TCO Norway were electronically served with a copy of the foregoing on September 24, 2020 via the Court's ECF system.

*/s/ Domingo M. LLagostera*
Doming M. LLagostera