**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC. | § | |
| NCS MULTISTAGE LLC., | § | |
| | § | CIVIL ACTION NO. 6:20-cv-00622-ADA |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TCO AS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT TCO AS'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**COMPLAINT PURSUANT TO 12(B)(2) FOR LACK OF PERSONAL JURISDICTION,**
**12(B)(3) FOR IMPROPER VENUE, AND 12(B)(6) FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.    INTRODUCTION...........................................................................................................1

II.   THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER TCO AS...............2

    A.   Legal Standard .......................................................................................................2

    B.   There is no relationship among TCO AS, the forum and the litigation to support specific Jurisdiction...........................................................................................................3

        1.   TCO AS Does Not Have Sufficient Minimum Contacts with the Forum .....................4

        2.   NCS's Claims Do Not Arise out of TCO AS's Activities............................................8

        3.   Asserting Specific Jurisdiction Here Would Be Unreasonable and Unfair ...................9

        4.   No Specific Jurisdiction Under an Alter Ego or Agency Theory ...............................10

        5.   No Specific Jurisdiction Under a Stream of Commerce Theory .................................10

            a)   TCO AS and TCO Products are Two Separate Entities and Their Affiliation is Not Sufficient to Support a Stream of Commerce Theory ......................................................11

    C.   No Basis for Jurisdiction Pursuant to Fed. R. Civ. P. 4(k)(2)..........................................12

III.  THE COURT SHOULD DISMISS FOR IMPROPER VENUE ...............................13

IV.   THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM ...........14

    A.   Legal Standard .....................................................................................................14

    B.   The inducement Allegations are Deficient and Mandate Dismissal................................14

        1.   TCO AS Did Not Induce TCO Products to Infringe ...................................................15

        2.   TCO AS Does Not Induce US Customers to Infringe .................................................18

    C.   NCS's Contributory Infringement Claim Is Defective and Requires Dismissal ..............19

V.    CONCLUSION ..............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
   2014 WL 2892285 (W.D. Tex. May 12, 2014) ...........................................................15, 16, 18

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964)...................................................................................................19

*Artrip v. Ball Corp.*,
   735 F. App'x 708 (Fed. Cir. 2018) .........................................................................20

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987)........................................................................................3, 9, 10, 11

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   2018 WL 7140299 (E.D. Tex. Nov. 30, 2018) .........................................................7

*Belden Techs., Inc. v. LS Corp.*,
   626 F. Supp. 2d 448 (D. Del. 2009)........................................................................13

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)...........................................................................................19, 20

*In re Bill of Lading Transmission*,
   681 F. 3d 1323 (Fed. Cir. 2012)........................................................................14, 19

*Boston v. Orthofix Med., Inc.*,
   2019 WL 4277386 (E.D. Tex. Sept. 9, 2019) ..........................................................9

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   447 F.3d 411 (5th Cir. 2006) .................................................................................10

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017).............................................................................................9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...............................................................................................10

*Celgard, LLC v. SK Innovation Co., Ltd.*,
   792 F. 3d 1373 (Fed. Cir. 2015)............................................................................11

*DoDots Licensing Sols. LLC v. Lenovo Holding Co.*,
   2018 WL 6629709 (D. Del. Dec. 19, 2018).......................................................16, 18

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)..............................................................................15

*Global-Tech Appliances, Inc. v. SEB SA.*,
   563 U.S. 754 (2011)..................................................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..................................................................................................10

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)..................................................................................14

*Interactive Toybox, LLC v. Walt Disney Co.*,
   No., 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ...............................................11

*Iron Oak Techs., LLC v. Dell, Inc.*,
   2018 WL 1631396 (W.D. Tex. Apr. 4, 2018)..........................................................20

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)..................................................................................................11

*Match Grp., LLC v. Bumble Trading Inc.*,
   2020 WL 1287958 (W.D. Tex. Mar. 18, 2020) .........................................................3

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012)..............................................................................2, 3

*Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*,
   64 F. Supp. 2d 448 (E.D. Pa. 1999) ........................................................................13

*Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*,
   2020 WL 4289388 (W.D. Tex. July 27, 2020) ...................................................11, 17

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017); ...........................................................3, 4, 6, 7, 17

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010)..................................................................................2

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
   2012 WL 9864381 (E.D. Tex. July 27, 2012) ........................................................19

*Polar Electro Oy v. Suunto Oy*,
   829 F. 3d 1343 (Fed. Cir. 2016)...............................................................................11

*QR Spex, Inc. v. Motorola, Inc.*,
   507 F. Supp. 2d 650 (E.D. Tex. 2007).....................................................................11

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009)...........................................................................3, 12

ii

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)......................................................................................... 14-15

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009)........................................................................................ 2-3, 12

*Viam Corp. v. Iowa Export-Import Trading Co.*,
    84 F.3d 424 (Fed. Cir. 1996)....................................................................................................9

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)...............................................................................................14

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 ............................................................................................................................2, 3

**Statutes**

28 U.S.C. § 1391.............................................................................................................................13

35 U.S.C. § 271..........................................................................................................................14, 19

**Other Authorities**

Fed. R. Civ. P. 4.............................................................................................................2, 3, 12, 13

Fed. R. Civ. P. 12........................................................................................................................14, 20

76382502.15

Pursuant to Federal Rule of Civil Procedures 12(b)(2), (3), and (6), Defendant TCO AS ("TCO AS") moves to dismiss the First Amended Complaint (Dkt. No. 48-3) (the "FAC") filed by Plaintiffs NCS Multistage, Inc. and NCS Multistage, LLC (collectively, "NCS" or "Plaintiffs"). In support thereof, TCO AS would respectfully show the Court the following:

## I.     INTRODUCTION

TCO AS is a Norwegian oilfield service company based in Indre Arna, Norway. It does not conduct business in the US, outside of its US subsidiary, TCO Products, Inc. ("TCO Products"). On July 9, 2020, NCS filed its Original Complaint for Patent Infringement ("Original Complaint"), alleging TCO AS, TCO Products, and Arsenal Inc. ("Arsenal") directly and indirectly infringed U.S. Patent No. 10,465,445 (the "'445 Patent"). *See generally*, Dkt. 1. The '445 Patent issued on November 5, 2019. The TCO Defendants moved to dismiss the Original Complaint for improper venue (TCO Products), and lack of personal jurisdiction, improper venue, and failure to state a claim (TCO AS).

After conducting extensive venue/jurisdictional discovery, NCS dismissed its allegations against the alleged direct infringer (TCO Products), to avoid dismissal for improper venue. Dkt. No. 46. NCS subsequently filed the FAC only asserting that TCO AS is liable for indirect infringement of the '445 Patent by (1) inducing TCO Products to make, use, offer for sale, and/or sell the TDP-PO (Pump Open – Casing and Tubing Floating Device) ("TDP-PO" or "Accused Product") in the U.S., (2) encouraging US customers of the TDP-PO to perform infringing methods, and (3) contributorily infringing by shipping to Texas a component that is specially made to assembled into the TDP-PO. See generally FAC.

The evidence of record amply supports that TCO AS does not have sufficient minimal contacts with Texas and the U.S., to support a fair and just exercise of personal jurisdiction that will not offend the traditional notions of fair play and substantial justice. TCO AS respectfully

1

submits the FAC should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim.

## II.      THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER TCO AS

NCS's FAC asserts two faulty specific jurisdiction theories for why the Court should exercise personal jurisdiction over TCO AS: (1) TCO AS allegedly directed activities at Texas that give rise to Plaintiff's patent infringement claims, and (2) in the alternative, TCO AS allegedly directed activities at the U.S. that give rise to Plaintiff's patent infringement claims, such that personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) comports with due process. Each of these theories fail to support specific jurisdiction, and should be dismissed as a matter of law.

### A.      LEGAL STANDARD

Plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Federal Circuit law governs the determination of whether a district court may exercise personal jurisdiction over an out-of-state accused infringer in a patent case. *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir. 2010). For a court to have personal jurisdiction over a defendant, jurisdiction must exist under the forum state's long-arm statute, and assertion of personal jurisdiction must be consistent with the limitations of the due process clause. *Id.* at 1230. Due process requires that a foreign defendant have sufficient minimum contacts with the forum, such that the foreign defendant should "reasonably anticipate being haled into court" in the forum. *World-Wide Volkswagen Corp.*, 444 U.S. 286.

Further, jurisdiction pursuant Rule 4(k)(2) is only appropriate "as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). The relevant forum for a due process analysis pursuant to Rule 4(k)(2), is the United States as a whole. *See*, *e.g*., *Touchcom, Inc. v. Bereskin &*

2

*Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) ("However, the due process analysis under Rule 4(k)(2) … 'contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.'") *Merial Ltd.*, at 1295; *See also Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1289-90 (Fed. Cir. 2009).

### B.    THERE IS NO RELATIONSHIP AMONG TCO AS, THE FORUM AND THE LITIGATION TO SUPPORT SPECIFIC JURISDICTION

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375-76 (Fed. Cir. 2017) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). Specific jurisdiction in patent cases requires a three-part test: (1) whether the defendant purposefully directed its activities to the forum State; (2) whether the claims arise out of or relate to those activities; and (3) whether the assertion of jurisdiction is reasonable and fair. *NexLearn, LLC.*, at 1376. The fatal flaw of the FAC is that it relies on TCO AS's conduct that occurred prior to the issuance of the '445 Patent and fails to connect these pre-issuance activities to the presently-alleged infringement. *See* Ex. 3 (summary of pre-issuances allegations excluded by *NexLearn*). A defendant's conduct prior to issuance of the patent-in-suit is not relevant to the specific jurisdiction analysis because specific jurisdiction "requires that the plaintiff's suit arises out of or relates to the defendant's contacts with the forum." *NexLearn, LLC.*, at 1376. (internal quotations and citation omitted). "The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third." *Match Grp., LLC v. Bumble Trading Inc.*, 2020 WL 1287958, at *2 (W.D. Tex. Mar. 18, 2020). Further the Federal Circuit "has also applied the "stream of commerce" theory born in *World-Wide Volkswagen Corp.* and reaffirmed in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *Match Grp.*,

2020 WL 1287958 at *2. No matter which theory is applied, there is no personal jurisdiction over TCO AS.

### 1.    TCO AS Does Not Have Sufficient Minimum Contacts with the Forum

TCO AS has not purposefully directed sufficient activities at Texas, and TCO AS's alleged contacts with this forum are attenuated and unrelated to NCS's claims for patent infringement. Thus, there is a lack of sufficient minimum contacts to support the exercise of personal jurisdiction over TCO AS.

NCS in the FAC asserts that jurisdiction is proper because TCO AS purportedly "created and designed" the TDP-PO, created TCO Products to be its "manufacturing arm," and provides specifications to TCO Products on TDP-PO assembly. (Dkt. 48-3, ¶ 7.) NCS's jurisdictional allegations are without merit because the recited activities occurred prior to the issuance of the '445 Patent, and therefore cannot be used to establish specific jurisdiction because they do not proximately arise from the allegations of infringement. *NexLearn, LLC*, 859 F.3d at 1376-77; *see also* Ex. 3. NCS asserts that TCO AS created its wholly owned subsidiary, TCO Products, to be its manufacturing arm for sales of its products both domestically and internationally. (Dkt. 48-3, ¶ 7.) Similarly, NCS alleges that TCO AS instructed TCO Products to be its manufacturing arm for the TDP-PO Floating Device. *Id*. TCO Products was created in 2009—well before the issuance of the '445 Patent, and is therefore also irrelevant to the specific jurisdiction analysis. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 51:17-18, 20-24 – 52:1-3, 5-6). Further, contrary to NCS's assertions, TCO AS did not create TCO Products to be its "manufacturing arm" in order to assemble the TDP-PO. TCO AS's corporate designee testified that it was not the goal of TCO AS to enter the U.S. Market:

> Q. Was TCO AS able to successfully enter the U.S. market? …
>
> A. It's up to me [Steve Cramp, Managing Director of TCO Products]. So TCO[A]S created TCO Prod---well, created the corporation, uh, C-corp of TCO Products, Inc. back in 2009.

> Q. Okay. And, uh, through the creation of TCO Products was TCO AS able to enter the U.S. market?
>
> A. Negative. They never entered the U.S. market.
>
> Q. So they did not achieve their objective in creating TCO Products.
>
> A. They achieved the objective of creating TCO Products, Inc. as the C corporation. That's it.

(Ex. 2, Jan. 6 Cramp Corp. Dep. at 51:17-18, 20-24 – 52:1-3, 5-6).

NCS also alleges that TCO AS provides TCO Products with support and oversight related to marketing/sale of the TDP-PO, including Texas sales. (Dkt. 48-3, ¶ 7.) Again, NCS misconstrues the record. Mr. Cramp testified that he, as the Managing Director of TCO Products, is responsible for the marketing and sales of the TDP-PO in the US, not TCO AS. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 89:6-11; 85:1-8). Mr. Cramp also testified that the last time that TCO Products received marketing/sales support from TCO AS was in 2017 when TCO Products attended an industry conference. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 89:6-25). Again, all of the recited allegations occurred prior to the issuance of the '445 Patent in November of 2019 and therefore are not minimum contacts relevant to the specific jurisdiction inquiry.

Further, the venue/jurisdictional documentary discovery and Mr. Cramp's deposition testimony establish that prior to the issuance of the '445 Patent TCO AS did not play any role whatsoever in the sale and distribution of the TDP-PO in the U.S., or the State of Texas. The evidence further establishes that since early 2015, TCO Products has exercised exclusive responsibility for processing all U.S. sales and distribution of the TDP-PO in the U.S. Since, early 2015, TCO AS has not shipped a single accused product to Texas. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 59:3-9; *see also* Ex. 1, Jan. 7 Cramp Corp. Dep. at 216:17-217:7; 220:3-6). Further, TCO AS has no role in manufacturing the TDP-PO for U.S. customers. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 91:9-11). The FAC alleges that TCO AS designed the Accused Product and provided

5

manufacturing specifications to TCO Products. However, the Accused Product was designed at least as early as 2011, well before the '445 Patent issued on Nov. 5, 2019. (Ex. 1, Jan. 7 Cramp Corp. Dep. at 189:14-191:17, Ex. 4, Declaration of Steven Cramp ("Cramp Decl.") at ¶ 5). Additionally, the machine print specifications of the accused features of the TDP-PO (that NCS alleges to be manufacturing specs) were provided to TCO Products prior to the '445 Patent issuance. (*See* Ex. 1, Jan. 7, Cramp Corp. Dep. at 189:14-191:17; Ex. 4, Cramp Decl. ¶ 6).

TCO AS anticipates that NCS will assert that TCO AS employees travel to industry OTC conferences in Houston, Texas to support maintaining specific jurisdiction over TCO AS.  The fact that two (2) TCO AS employees attended the OTC conference in 2017 is inapposite because that attendance predates the issuance of the '445 Patent by at least two years and therefore does not relate to the allegation of infringement. *NexLearn*, 859 F.3d 1376-77. Additionally, NCS's assertion is gutted by the fact that the visit had nothing to do with TCO AS entering the Texas market, nor was it to increase TCO Products's market share in Texas. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 131:1-16).  No TCO AS employee has traveled to Texas to attend a conference since at least 2017. (Ex. 4, Cramp Decl. at ¶ 8).  NCS will also likely that TCO AS field engineers traveled to Texas to assist with a couple of offshore project.  However, these offshore installations have nothing to do with the accused TDP-PO (which are installed inland, not offshore) and one of the two trips made by TCO AS engineers occurred prior to the issuance of the '445 Patent. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 30:21 – 31:10; Ex. 4, Cramp Decl. at ¶ 7).  NCS will also likely assert that TCO AS filed post-grant challenges at the U.S. Patent Office but not TCO Products. This is simply untrue.  Both TCO AS and TCO Products were identified as the real parties in interest in the petitions filed with the PTAB after NCS filed its Original Complaint against both parties. *See* PGR2020-00078 and PGR2020-00078 Petitions.

6

Finally, NCS claims that TCO AS advertises on its website, www.tcogroup.com, that its TDP-PO Floating Device can be installed on casing and run into a well with the casing. (Dkt. 48-3, ¶ 22.)  Here, NCS grossly misstates the facts and witness testimony regarding this point.  The website advertisement to which NCS refers is a case study article on the TCO Group website dated February 17, 2015, detailing an event that transpired, on June 8, 2014, more than five years in advance of the issuance of the Asserted Patent. (Ex. 5, Feb. 17, 2015 Case Study: Use of TDP-PO in Midland field, Texas).[1]  Mr. Cramp, when testifying about this document, unequivocally stated that no one from TCO AS was present during the discussed installation in Midland in 2014, and that no one from TCO AS was involved in the installation and this was a customer of TCO Products, not TCO AS. (Ex. 1, Jan. 7 Cramp Corp. Dep. at 208:22 – 209:25).  Thus, nothing about this case study from 2014 establishes that TCO AS has U.S. customers, or is advertising to anyone in the U.S.  Indeed, Mr. Cramp testified that TCO AS does not have U.S. customers and that TCO Products is the only entity that deals with U.S. customers. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 53:6-15; 106:12-24).  Mr. Cramp also testified that to the extent a request for a technical product sheet comes in the TCO Group website the request is immediately forwarded to his attention as the Managing Director of TCO Products. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 62:10 – 63:5).

Simply put, TCO AS does not have minimum contacts with this forum, and any activities done before the issuance of the '445 Patent have no relevance to a specific jurisdiction analysis. *See NexLearn*, 859 F.3d 1376-77; *B/E Aerospace, Inc. v. Zodiac Aerospace*, 2018 WL 7140299, at *3, 5 (E.D. Tex. Nov. 30, 2018) (recommending dismissal for lack of personal jurisdiction of "holding company headquartered in France with no presence in the United States" and of a "United

---

[1] Available at TCO Group website at http://www.tcogroup.com/case-studies/use-of-tdp-po-as-flotation-device-helps-ensure-successful-installation-and-full-bore-access-in-midland-field-tx-article124-72.html

7

States holding company headquartered in New Jersey" that have not directed any activities toward Texas), *rept. & rec. adopted*, 2019 WL 354883 (E.D. Tex. Jan. 28, 2019).

Accordingly, TCO AS does not have the requisite minimum contacts with this district upon which this court may exercise personal jurisdiction over it.

### 2. NCS's Claims Do Not Arise out of TCO AS's Activities

Similarly, the second prong of the specific jurisdiction test is not satisfied. TCO AS does not direct any substantial activity related to the accused TDP-PO or the '445 Patent toward this forum.  In fact, the indirect infringement allegations are based solely on a product sold, offered for sale, and manufactured at the direction of TCO Products.

TCO AS is not a seller of the accused product in the US, nor is it alleged to be the manufacturer of the accused product in the U.S. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 91:9-11). Nor does TCO AS have any connection to any of the Texas-directed activities listed in NCS's FAC. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 131:1-16). Since early 2015 (well before the asserted patent issued), TCO AS has not placed any accused product in any stream of commerce that flows to or through Texas. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 59:3-9; *see also* Ex. 1, Jan. 7 Cramp Corp. Dep. at 216:17-217:7; 220:3-6).  TCO AS is not involved with the business in Texas, nor TCO Products's minimal sales around the Permian Basin or the Eagle Ford Shale. (Ex. 1, Jan. 7 Cramp Corp. Dep. at 206:2-23). TCO AS has neither sponsored nor displayed a booth, podium, or presentation at a conference in Texas, nor does TCO AS have any employees or customers in Texas. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 53:6-15; Ex. 1, Jan. 7 Cramp Corp. Dep. at 186:1-6; 215:12-21).  And TCO AS does not direct the activities of any entity in Texas. (*Id*.)

As a result, NCS's patent infringement allegations neither arise out of nor relate to any activity of TCO AS, let alone any activity involving the Forum.

8

### 3.   Asserting Specific Jurisdiction Here Would Be Unreasonable and Unfair

Determining whether the assertion of personal jurisdiction would be reasonable or fair involves balancing the burden on the defendant against the interests of the forum and the plaintiff, in litigating the case in the forum.  *See Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 429 (Fed. Cir. 1996).  Here, no one has a strong interest in adjudicating the case in this district that would outweigh the considerable burden on TCO AS.  Moreover, also lacking are "traditional notions of fair play and substantial justice," which include (1) the burden on the defendant, (2) the forum State's interest in the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113.

The "primary concern," however, is "the burden on the defendant" because "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780–81 (2017). Because TCO AS contests personal jurisdiction, the burden falls on Plaintiff to show that the exercise of personal jurisdiction does not offend TCO AS's due process rights. *Boston v. Orthofix Med., Inc.*, 2019 WL 4277386, at *2 (E.D. Tex. Sept. 9, 2019). This is a burden NCS cannot carry.

TCO AS maintains no offices, place of business, telephone number, mailing address, bank account, or any real property in Texas. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 44:5-16; 133:7-24;

106:12-24). Accordingly, the burden on Defendant to litigate in a foreign forum is high. Defendant is not a resident of Texas, further diminishing Texas's interests in the litigation. Defendant has not "'deliberately' . . . engaged in significant activities" in Texas or with Texas residents, has no "continuing obligations" with Texas residents, and has not "manifestly . . . availed [it]self of the privilege of conducting business" in Texas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Indeed, TCO AS's contacts with Texas would "be so [] 'fortuitous' or 'attenuated' that it cannot fairly be said that [Defendant] 'should reasonably anticipate being hauled into court' in [Texas]." *See id*. at 486. These factors weigh heavily against NCS's interest in litigating in this district.

### 4.    No Specific Jurisdiction Under an Alter Ego or Agency Theory

Specific jurisdiction under an alter ego or agency theory is "reserved for exceptional cases," *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006), and, demonstrating jurisdiction under such a theory requires an exhaustive multifactor analysis. Here, NCS's FAC is devoid of any alter ego or agency theory facts aimed at establishing specific jurisdiction. NCS cannot claim that TCO AS is subject to specific jurisdiction based on the activities on its US subsidiary TCO Products. TCO Product's activities cannot be imputed to TCO AS or vice versa. Accordingly, NCS has failed to sufficiently plead specific jurisdiction under an alter ego or agency theory.

### 5.    No Specific Jurisdiction Under a Stream of Commerce Theory

The "stream of commerce theory" contemplates "a nonresident defendant, acting *outside* the forum, plac[ing] in the stream of commerce a product that ultimately causes harm *inside* the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 926 (2011) (emphasis in original). The U.S. Supreme Court has articulated two tests for specific jurisdiction under a stream of commerce theory. In the first test, the defendant must place the accused products into

the stream of commerce and be "aware that the final product is being marketed in the forum State." *Asahi,* 480 U.S. at 117 (1987) (J. O'Connor plurality opinion); *accord J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 881-82 (2011). The second test is the same as the first but *additionally* requires "an act of the defendant purposefully directed toward the forum State." *Asahi,* 480 U.S. at 112 (J. Brennan plurality opinion); *J. McIntyre,* 564 U.S. at 883. The Federal Circuit has not decided which of the tests to adopt, because "the resolution of the cases [before it] thus far has not required [the Court] to 'take a side on the *Asahi* divide.'" *Polar Electro Oy v. Suunto Oy,* 829 F. 3d 1343, 1349-50 (Fed. Cir. 2016); *Celgard, LLC v. SK Innovation Co., Ltd.,* 792 F. 3d 1373, 1382 (Fed. Cir. 2015) (finding no specific jurisdiction using either test of stream of commerce theory,). Here, this Court need not decide which test applies because under either test, TCO AS is not subject to specific jurisdiction under the "stream of commerce" theory.

### a)   TCO AS and TCO Products are Two Separate Entities and Their Affiliation is Not Sufficient to Support a Stream of Commerce Theory

The FAC incorrectly implies that the operations and activities of TCO Products and TCO AS should be conflated for the purpose of specific personal jurisdiction.  This is wrong as a matter of law.  A U.S. subsidiary's contacts are not automatically imputed to a foreign parent. *See QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007) (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999)).  Moreover, NCS pleads no set of facts that establish a theory of alter ego liability over Norwegian entity TCO AS. *See Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*, No. 6:19-CV-00721-ADA, 2020 WL 4289388, at \*2 (W.D. Tex. July 27, 2020) ("[A]ctivities consistent with the parent's and subsidiary's relationship should not give rise to a finding of an alter ego."). "There must be a plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Interactive Toybox, LLC v. Walt Disney Co.*, No., 2018 WL 5284625, at \*3 (W.D. Tex. Oct. 24, 2018).  Here, there are none. As explained

11

above, and as testified by Mr. Cramp, TCO AS does not make, offer to sell or sell within the U.S., export to the U.S. or import for sale into the U.S. the TDP-PO. (Ex. 1, Jan. 7 Cramp Corp. Dep. at 216:7-217:13). Additionally, TCO AS does not place the accused products or components thereof into the stream of commerce with the expectation that the accused product would be installed in the U.S., nor does it market the accused product to the U.S. or Texas specifically. (Ex. 1, Jan. 7 Cramp Corp. Dep. at 215:4-21.) To the extent any alleged activity takes place in Texas, it is undertaken by TCO Products, not TCO AS. In sum, the stream of commerce theory provides no basis to exercise personal jurisdiction over TCO AS.

### C.   NO BASIS FOR JURISDICTION PURSUANT TO FED. R. CIV. P. 4(k)(2)

To establish jurisdiction pursuant to Fed. Civ. P. 4(k)(2), a plaintiff must how that "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes*, 563 F.3d at 1293–94. NCS makes a single reference to Federal Rule of Civil Procedure 4(k)(2), in an assertion that TCO AS has sufficient minimum contacts with the forum "pursuant to Fed. R. Civ. P. 4(k)(2)." (Dkt. 52 at ¶7). The Achilles heel of NCS's assertion, however, lies with the "third requirement under Rule 4(k)(2)—the due process analysis—[that] contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id*. at 1295. "Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id*. at 1296.

Here, as described in Section II, assertion of personal jurisdiction over TCO AS would not satisfy due process because it would not be reasonable or fair. The factors for reasonableness and fairness under Rule 4(k)(2) are the same as those under Rule 4(k)(1). *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009). Thus, as described in Section II.B.3, it would be

12

unreasonable and unfair to subject TCO AS to litigation in the Western District of Texas because TCO AS has no reasonable expectation to be hauled into court in the this district, it is not putting products into stream of commerce in the U.S., it has no systematic and continuous contacts with this District, and NCS has not pled general jurisdiction nor any alter ego theory. Moreover, the evidence is clear that TCO AS does not have sufficient minimal contacts with the U.S.: it has no offices or physical locations in the U.S. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 44:5-16; TCO AS employees have not traveled to the US to work with US suppliers regarding the accused product (*Id*. at 189:24-191:3); and TCO AS does not conduct business in the U.S. outside its subsidiary, TCO Products (*Id.* at 53:6-15; 106:12-24). Accordingly, this Court may not exercise jurisdiction over TCO AS pursuant to Rule 4(k)(2).

## III.    THE COURT SHOULD DISMISS FOR IMPROPER VENUE

This action should be dismissed because the Western District of Texas is not a proper venue. [2] Although a "defendant not resident in the United States may be sued in any judicial district," 28 U.S.C. § 1391(c), venue is not proper where personal jurisdiction is lacking. *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 460 (D. Del. 2009) ("a finding of personal jurisdiction over a foreign defendant is a preliminary requirement to Section 1391(c)'s provision that an alien may be sued in any judicial district"); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) ("venue is improper[] . . . because the court does not have personal jurisdiction over the defendant"). Here, Texas courts do not have personal jurisdiction over Defendant TCO AS (*see* Section II, *supra),* and therefore this case should be dismissed for improper venue.

---

[2] Should the Court deny the instant motion TCO AS will file a motion to transfer venue to the SDTX consistent with the Court's Order Governing Proceedings – Patent Case.

## IV. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

### A. LEGAL STANDARD

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." For inducement, NCS must allege specific facts showing that: (1) TCO AS knew of the asserted patent; (2) TCO AS knowingly induced a third party to perform certain acts with the specific intent to induce the third party to directly infringe the patent; and (3) as a result of TCO AS's alleged inducement, the third party directly infringed the patent. *See* 35 U.S.C. § 271(b); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.").

To state a claim for contributory infringement, NCS must allege factual support to show that: (1) TCO AS had pre-suit knowledge of the asserted patent; (2) TCO AS knew that the accused products constitute a "material part of the [claimed] invention" and have "no substantial non-infringing uses"; (3) TCO AS knew the accused products were "especially made or especially adapted" to infringe the asserted patents; and (4) that one or more third parties used the accused products to directly infringe the patents. *See* 35 U.S.C. § 271(c); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010); *Bill of Lading Transmission*, 681 F. 3d 1323, 1137 (Fed. Cir. 2012).

### B. THE INDUCEMENT ALLEGATIONS ARE DEFICIENT AND MANDATE DISMISSAL

Indirect infringement claims are subjected to the heightened pleading standard of *Twombly* and *Iqbal*. For inducement claims to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead facts plausibly showing "direct infringement, and that the alleged infringer

14

knowingly induced infringement and possesses specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). The accused inducer must not only intend to bring about the induced acts, but also have knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB SA.*, 563 U.S. 754 (2011). This element is "demanding" and requires more than "generalized allegations" that the accused infringer induced infringement via "marketing and sales tactics." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). NCS's FAC consists of the type of "generalized allegations" that this Court has warned against. *Affinity Labs of Tex.*, 2014 WL 2892285 *7 ("Plaintiff's generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are likewise insufficient."). NCS puts forwards two types of induced infringement allegations: (1) TCO AS induces TCO Products to directly infringe the '445 Patent, and (2) that TCO AS induces unnamed US customers to use the TDP-PO in an infringing manner. In both instance however, NCS has failed to plead specific facts sufficient to support the elements of an induced infringement claim.

### 1.     TCO AS Did Not Induce TCO Products to Infringe

NCS generically alleges that TCO AS has induced TCO Products to infringe the '445 Patent "by directing, causing, instructing and/or encouraging TCO [Products] to manufacture or assemble" the TDP-PO. (Dkt. 52 at ¶22). The Supreme Court and Federal Circuit have repeatedly held that, to satisfy the specific intent prong of an inducement claim, a patentee must prove that the accused infringer specifically intended to cause a third party to infringe – i.e., that the defendant affirmatively intended to cause infringement, and not just the induced acts. *See Global-Tech. Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[I]nduced infringement under [35 U.S.C.] § 271(b) requires knowledge that the induced acts constitute patent infringement."); *DSU Med.*

15

*Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.").

The FAC is devoid of plausible factual allegations that support that TCO AS intended to cause TCO Products to infringe the '445 Patent and intended to cause inducing acts. Additionally, the FAC is devoid of any factual allegations that "identify any particular statement or material that plausibly suggests Defendant [] intend to induce infringement." *DoDots Licensing Sols. LLC v. Lenovo Holding Co*., 2018 WL 6629709, at \*4–5 (D. Del. Dec. 19, 2018); *see also*; *Affinity Labs of Tex.*, 2014 WL 2892285 \* 7 ("In the instant case, Plaintiff does not specify how the marketing and selling activities of Toyota actually induced third-parties to infringe the Asserted Patents."). The FAC does not identify any particular statement or instruction from TCO AS to TCO Products that plausibly support that TCO AS intended to induce infringement. This alone warrants the dismissal of NCS's inducement claims.

In an attempt to rectify the faulty pleading, NCS mischaracterizes the venue/jurisdictional evidence. NCS incorrectly states that TCO Products was created to be TCO AS's "manufacturing arm." As discussed above in Section II.B.1, this is simply not true. Both TCO Products and TCO AS manufacture and assemble the TDP-PO, but TCO AS only manufactures and assembles TDP-PO devices that are sold outside of the US. (Ex. 2, Jan. 6 Cramp Corp. Dep. at 51:17-18, 20-24 – 52:1-3, 5-6, 61:3-61:22). TCO Products is not the "manufacturing arm" of TCO AS. This is merely a thinly-veiled alter ego insinuation that must be rejected. (*See*, Ex. 1, Jan. 7 Cramp Corp. Dep. at 213:8-215:8; *Nat'l Steel Car Ltd.* 2020 WL 4289388, at \*3; *see also* Sections II.B.1 and II.B.4).

16

TCO AS neither directs, causes, instructs nor encourages TCO Products to manufacture or assemble the TDP-PO Floating Device, and NCS has failed to identify in its FAC specific instructions or encouragement to practice the claimed apparatus claims. Indeed, Mr. Cramp testified that (1) TCO AS never traveled to Texas to instruct any TCO Products employees on tool [TDP-PO] assembly (Ex. 1, Jan. 7 Cramp Corp. Dep. at, 190:2-9); (2) nobody from TCO AS ever came to Texas or anywhere else to work with TCO Products's suppliers and with regard to the specifications with TDP-PO (*Id.* at 190:24 – 191:3); (3) TCO Products, through Mr. Cramp's experience, obtained the knowledge necessary to assemble the TDP-PO by trial and error in 2014 (*Id.* at 191:13-19); and (4) TCO Products needed no other knowledge beyond its independent disassembly/reassembly of the TDP-PO to assemble the TDP-PO. (*Id.* at 192:2-19). TCO AS neither instructs nor directs TCO Products's manufacturing or assembly activities.

NCS also relies on activities that occurred prior to the issuance of the asserted '445 Patent in support of its infringement claims. *See* Ex. 3, (summary of pre-issuance allegations). However, pre-issuance activities cannot be used to state a claim for infringement because the alleged infringing activities did not occur during the term of the patent and cannot constitute infringing acts giving rise to a claim. *NexLearn, LLC*, 859 F.3d at 1376–77. The FAC alleges that TCO AS designed the Accused Product and provided manufacturing specifications to TCO Products. However, the Accused Product was designed well before the '445 Patent issued. Ex. 1, Jan. 7 Cramp Corp. Dep. at 189:14-191:17, (Ex. 4, Cramp Decl. ¶ 5). Additionally, the machine print specifications of the accused features of the TDP-PO (that NCS alleges to be manufacturing specs) were provided to TCO Products prior to the issuance of the '445 Patent. (*See* Jan. 7, Cramp Corp. Dep. at 189:14-191:17; Ex. 4, Cramp Decl. ¶ 6). Accordingly, these activities cannot be inducing

17

activities to state a claim for induced infringement because they did not occur during the term of enforceability of the '445 Patent.

### 2. TCO AS Does Not Induce US Customers to Infringe

NCS further alleges that TCO AS has induced and/or is inducing U.S. customers to use the TDP-PO to perform infringing flotation methods, thus indirectly infringing method claims 22-25, 27, 50-53, and 55-57. (Dkt. 52, ¶ 22.) NSC alleges that the method claims are infringed when the TDP-PO device is installed in a wellbore on land by U.S. customers. Again, the FAC fails to identify any particular statement or materials that plausibly suggests TCO AS induced U.S. customers to infringe the '445 Patent. This is insufficient to meet the heighten standard of inducement claims. *Affinity Labs of Tex*., LLC, 2014 WL 2892285 at 7; *DoDots Licensing*, 2018 WL 66229709 at 4-5. The FAC merely alleges that TCO AS's website advertises to customers that the TDP-PO can be installed in a wellbore. Dkt. No. 52, ¶ 22. Generic allegations regarding a defendant's website is insufficient to state a plausible claim for inducement infringement. *Id*.

NCS has not and cannot state a plausible claim for TCO AS inducing US customers to infringe the asserted patent. Such allegations are contradicted by the facts as testified to by TCO AS's corporate representative. Mr. Cramp testified that TCO AS does not have customers that purchase and install the TDP-PO in the U.S., and that the U.S. is not a target market for TCO AS. Ex. 1, Jan. 7 Cramp Corp. Dep. at 217:8-11; 219:11-16. Because TCO AS does not have U.S. customers, it surely cannot and does not induce U.S. entities to infringe the '445 Patent in the U.S. Ex. 2, Jan. 6 Cramp Corp. Dep. at 106:12-24 (TCO AS does not sell any TDP-POs to customers in the U.S., and does not sell them to foreign customers knowing that those products will end up in the U.S.).

In sum, NCS has failed to plead facts sufficient to support any element of an induced infringement claim. That failure justifies dismissal of those claims as a matter of law.

18

## C.     NCS'S CONTRIBUTORY INFRINGEMENT CLAIM IS DEFECTIVE AND REQUIRES DISMISSAL

To properly allege a claim for contributory infringement under 35 U.S.C. § 271(c), "a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Bill of Lading*, 681 F.3d at 1337. In addition, infringement pursuant to 35 U.S.C. § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). In the absence of factual allegations supporting NCS's legal conclusions, the contributory infringement claims should be dismissed.

Here, NCS's FAC makes no factual allegations about how the TDP-PO allegedly has no substantial noninfringing use. For contributory infringement of the '445 Patent, the FAC merely alleges that: "TCO [AS] ships to TCO [Products] components specifically designed for the TDP-PO Floating Device. TCO AS advertises the TDP-PO Floating Device to US customers as a device that can be used to float casing, and sells the device for that purpose." (Dkt. 52 at ¶23). However, the mere formulaic allegation that the components designed by TCO AS "specifically designed for the TDP-PO Floating Device" is insufficient to allow a reasonable inference that these products have no substantial non-infringing uses. *See, e.g.*, *Bill of Lading*, 681 F.3d at 1337-38; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 11-cv-229, 2012 WL 9864381, at *5 (E.D. Tex. July 27, 2012) (dismissing contributory infringement claim that "fails to identify the components used in the infringing method and is devoid of any allegation from which the Court can plausibly infer that any components being sold have 'no substantial non-infringing uses'").

Indeed, NCS fails to even identify in the FAC what the component TCO AS is allege to have provided to TCO Products, much less make any factual allegations that this unnamed component has no substantial noninfringing uses. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (dismissing amended complaint for failure to "plausibly assert facts to suggest that … the aluminum [defendant] supplied had no substantial noninfringing use.") (quotations omitted); *Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-CV-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) ("conclusory allegation that [t]he components provided by [Dell] are not staple articles of commerce suitable for substantial non-fringing use, is no more than a threadbare recital of one of the elements of a contributory infringement claim.") (internal quotations omitted).

NCS's failure to plead specific factual allegations to give rise to a plausible claim is particularly problematic given the deposition testimony of Mr. Cramp who testified that the parts provide by TCO AS to TCO Products are not "specialized parts." (*See* Ex. 1, Jan. 7 Cramp Corp. Dep. at 192:20-193:2). In view of the pleading requirements set forth in *Iqbal* and *Twombly* and the evidence of record, NCS's contributory infringement claim against TCO AS is plainly defective. *See Twombly*, 550 U.S. at 557. Because the FAC does not state a plausible claim for contributory infringement, NCS's claims of contributory infringement should be dismissed. For at least these reasons, TCO AS respectfully submit that NCS's claims are dismissed pursuant to Rule 12(b)(6) for the failure to state a claim.

## V.   CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court dismiss NCS's FAC in its entirety.

20

Dated: February 9, 2021

*/s/ Jonathan R. Spivey*
Jonathan R. Spivey
Texas Bar No. 24002989
jspivey@polsinelli.com
LaTasha M. Snipes
Texas Bar No. 24072504
tsnipes@polsinelli.com
Enes Ovcina
Illinois Bar No. 6325437
New York Bar No. 5096797
*Admitted Pro Hac Vice*
eovcina@polsinelli.com
POLSINELLI, PC
1000 Louisiana St., Suite 6400
Houston, Texas 77002
(713) 374-1600 (Office)
(713) 374-1601 (Facsimile)

*Attorneys for Defendant TCO AS*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2021 a copy of the foregoing Motion was electronically filed with the Clerk of the Court, United States District Court for the Western District of Texas and served via CM/ECF and email upon the counsel of record.

*/s/ Jonathan R. Spivey*
Jonathan R. Spivey

21

76382502.15