IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **NCS MULTISTAGE,** §<br>*Plaintiff,* §<br> §    **6:20-CV-00622-ADA**<br>**v.** §<br> §<br>**TCO AS,** §<br>*Defendant.* § | |

### ORDER DENYING DEFENDANT TCO AS'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), (3), (6), AND FOR FORUM NON-CONVENIENS

Before the Court is Defendant TCO AS's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6) which was filed on February 9th, 2021. ECF. No. 57. Plaintiff NCS Multistage filed its response on March 5th, 2021. ECF. No. 62. Defendant TCO AS then replied on Marth 12th, 2021. ECF. No. 64. Also before the court is TCO AS's motion to transfer case for Forum Non-Conveniens, which was filed on April 30, 2021. ECF No. 71. Plaintiff NCS Multistage filed its Response on May 19, 2021. ECF No. 74. Defendant TCO AS filed its Reply on May 24, 2021. After considering all related pleadings and the relevant law, the Court is of the opinion that both TCO AS's Motion for Dismissal and Forum Non-Conveniens should be **DENIED**.

### I. Factual Background

This is a patent dispute over the Patent No. 10,465,445 and TCO AS's alleged use of it in their TDP-PO Floating Device. ECF No. 1 at 1. TCO AS is incorporated and has headquarters in Bergen, Norway. ECF No. 42 at 1. The TDP-PO devices are marketed and sold in the United States and are handled by TCO Products, a subsidiary of TCO AS, whose headquarters are in Houston. ECF No. 71 at 1. NCS Multistage contends that TCO AS is a global company with a substantial presence in the Western District of Texas and, accordingly has filed the instant patent

1

infringement suit. ECF No. 74 at 10. Further, NCS alleges that many TCO AS employees, customers, executives, and inventors are located outside the Southern District of Texas and in fact reside in the Western District of Texas, Eastern District of Texas, Europe, and Canada. *Id* at 5-7. TCO AS has filed a motion to dismiss and, in the alternative, a motion seeking transfer to the Southern District of Texas.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss an action when it lacks personal jurisdiction over the defendant. For patent cases, Federal Circuit law governs personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1016 (Fed. Cir. 2009). When there has not been any jurisdictional discovery or an evidentiary hearing regarding jurisdiction, the "plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co., Ltd*., 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Personal jurisdiction is proper where the state long-arm statute permits service of process on the defendant and the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs*., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, these two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Supreme Court has articulated a two-pronged test to determine whether the requirements of due process are satisfied: 1) the nonresident must have "minimum contacts" with the forum state, and 2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Breckenridge*, 444 F.3d at 1361.

"The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists:

(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King*, 471 U.S. at 477). This test requires balancing the following factors: " (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp.*, 84 F.3d at 429.

The Federal Circuit has also applied the "stream of commerce" theory born in *World-Wide Volkswagen Corp. v. Woodson* and reaffirmed in *Asahi Metal Indus. Co. v. Superior Court*. See *Beverly Hills Fan*, 21 F.3d at 1566. In *Asahi*, two four-justice pluralities offered slightly

3

different versions of this theory as a means of establishing the existence of minimum contacts. *Id*. Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *Id*.

The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. See, e.g., *Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); see also *AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364.

### B. Motion to Dismiss for Improper Venue

"Any civil action for patent infringement may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). However, when a foreign corporation is sued for patent infringement, 28 U.S.C. § 1391 applies and not 28 U.S.C. § 1400. *In re HTC*, 889 F.3d 1349, 1357 (Fed. Cir. 2018). Section 1391(c) in Title 28 of the US Code U.S.C. § 1391(c) states that "a defendant not resident in the United States may be sued in any judicial district[.]…"

A party may move to dismiss a claim for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Once a defendant challenges venue, "the plaintiffs have the burden to prove that the chosen venue is proper." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,

982 F. Supp. 2d 714, 719 (W.D. Tex. 2013). On a Rule 12(b)(3) motion to dismiss for improper venue, the court must view all the facts in a light most favorable to the plaintiff. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009). "Thus, a plaintiff may show that venue is proper by 'setting forth facts that taken as true would establish venue.'" *Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 719; see also *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

### C. Motion to Dismiss for Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmly. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent

shall be liable as an infringer." For inducement, the plaintiff must allege specific facts showing that: (1) the defendant knew of the asserted patent; (2) the defendant knowingly induced a third party to perform certain acts with the specific intent to induce the third party to directly infringe the patent; and (3) as a result of the defendants alleged inducement, the third party directly infringed the patent. *See* 35 U.S.C. § 271(b); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.").

### D. Motion to Transfer Venue for *Forum Non-Conveniens*

A district court may transfer a civil action to another district or division where it might have been brought without the consent of both parties, only if the movant can meet its heavy burden to show that the transferee venue is clearly more convenient. *Hammond Dev. Int'l, Inc. v. Google LLC*, 1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984, at *5, 16 (W.D. Tex. June 24, 2020) (Albright, J.).

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties, witnesses and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964)). A motion for transfer, whether intra- or inter-district, involves a two-step analysis: 1) whether the case could have been properly brought in the forum to which transfer is sought and 2) whether transfer would promote the interest of justice and/or convenience of the parties and witnesses. *Radmax*, 720 F.3d 285, 288; *see also In re Volkswagen of America,*

*Inc.,* 545 F.3d 304, 312, 314 (5th Cir. 2004) (en banc).

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008). The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *ActionIndus., Inc. v. US. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In reVolkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *PiperAircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

### III. Discussion

**A.      TCO AS is subject to Personal Jurisdiction in this forum**

NCS AS contends that through shipping specialized products to TCO Products that TCO AS has purposely directed activities at residents of the forum. ECF. No. 62 at 15. NCS also argues that this claim relates to the allegedly infringing activities because these specialized products are used in the allegedly infringing product. *Id.* The Federal Circuit does not settle on a test to satisfy minimum contacts in *Beverly Hills Fan.* 21 F.3d at 1566. Because of this, the Court will apply Justice Brennan's stream of commerce theory laid out in *Asahi. 480 U.S. 102 (1987).*

(stating jurisdiction could be validly exercised over a defendant who places goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state). NCS satisfies Justice Brennan's theory, which requires the defendant to have the ability to foresee that the goods might end up in the forum state. ECF No. 62 at 11. NCS argues that TCO AS knew the components would end up in Texas, via direct shipment to TCO Products, and used to assemble the TDP-PO. *Id.* at 12. Thus, these shipments and related products satisfy the first two prongs of *Nuance* that (1) defendant purposely directed activities at residents of the forum and (2) that the claim arises out of or relates to those activities . 626 F.3d at 1231.

The last prong of *Nuance*, requires the defendant to rebut the showing that the assertion of personal jurisdiction is reasonable and fair. Reasonableness and fairness is measured by a five-part balancing test. *Viam Corp.*, 84 F.3d 429. TCO AS must show that a balance of the following factors leads to the conclusion that personal jurisdiction in this forum is unreasonable and unfair: (1) jurisdiction would place a burden on the defendant; (2) the forum state has no interest in the case; (3) the plaintiff's has little interest in obtaining relief; (4) showing the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) showing the interest of the states in furthering their social policies." *Id.* The parties concede the fourth and fifth prongs are irrelevant to this case. TCO AS contends that back and forth travel between Norway and Texas is not common and, thus, burdensome on the defendant. ECF. No. 64 at 8. Undoubtedly, travel between Norway and Texas is inconvenient, but, as NCS AS argues, establishing TCO Products in Houston for the manufacture and distribution of American TDP-PO devices, that the forum state has interest due to the prevalence of the product in Texas. ECF. No. 62 at 15. Lastly, NCS AS argues that because they are based in Texas and the allegedly infringing TDP-PO device is sold and used in Texas that they have an interest in relief. *Id.* at 15. Because the second and third prongs outweigh the first, jurisdiction in this forum is reasonable

and fair.

### B. Venue is Proper in the Western District of Texas

When a foreign corporation is sued for patent infringement, 28 U.S.C. § 1391 applies and not 28 U.S.C. § 1400. *In re HTC*, 889 F.3d 1349, 1357 (Fed. Cir. 2018). Section 1391(c) in Title 28 of the US Code states that "a defendant not resident in the United States may be sued in any judicial district." Because personal jurisdiction is found and TCO AS is not resident in the United States, venue is proper in the Western District of Texas.

### C. NCS AS Properly Stated a Claim

To evaluate whether NCS's complaint properly states a claim of induced patent infringement, the Court looks to *Vita-Mix Corp*'s three-part test. (1) The defendant knew of the asserted patent; (2) the defendant knowingly induced a third party to perform certain acts with the specific intent to induce the third party to directly infringe the patent; and (3) as a result of the defendants alleged inducement, the third party directly infringed the patent. 581 F.3d at 1328.

First, NCS AS alleges they informed TCO AS of the patent on December 17, 2019, TCS AS, via a letter that NCS's counsel sent to TCO AS's CEO Mr. Silversten. ECF. No. 50 at 6. Mr. Silverstein received the letter as he allegedly traveled to Houston in January 2020 to attempt to resolve the issue. *Id.* Second, NCS alleges that after they informed TCO AS of the patent, TCO AS continued to induce their wholly-owned subsidiary TCO Products to manufacture and sell the product through advertisement on their joint website. *Id.* 8. TCO AS also continued to ship components specifically designed for the allegedly infringing product to TCO Products and continued to induce customers to use the allegedly infringing device. *Id.* at 7-8. Lastly, and satisfying the third element in *Vita-Mix*, based on the pleadings in this case, it can be inferred that customers put the device to use and allegedly directly infringed the patent.

Because the first amended complaint satisfies all three factors in *Vita-Mix Corp*, NCS did

not fail to state a claim for induced patent infringement for induced patent infringement.

### D. The Southern District of Texas is not a Clearly More Convenient Venue to the Western District of Texas

The threshold determination in this transfer analysis is whether this case could have been brought in the destination venue—the Southern District of Texas. As a foreign corporation brought to suit for patent infringement, venue selection is governed by 28 U.S.C. § 1391 and not 28 U.S.C. § 1400. *In re HTC*, 889 F.3d 1349, 1357 (Fed. Cir. 2018). Section 1391(c) in Title 28 of the US Code states that "a defendant not resident in the United States may be sued in any judicial district**.**" The Southern District of Texas certainly falls under the category of any judicial district.

Once the destination venue is deemed appropriate, the convenience of the two venues are weighed. *Hammond Dev. Int'l, Inc.* 2020 U.S. Dist. LEXIS 110984, at *4 (W.D. Tex. June 24, 2020) Under Fifth Circuit law, this Court retains discretion to transfer an action to a district where the transferee venue is clearly more convenient. *Hammond*, 2020 U.S. Dist. LEXIS 110984, at *5. If the venue is found to not be clearly more convenient, the plaintiff's choice of venue should be respected. *Id.* Below are the public and private factors the Court considers when deciding to transfer the instant case based on convenience. The parties agree that the third public factor (familiarity of the forum with the law that will govern the case) and the fourth public factor (conflict of laws) are neutral, so those will not be discussed.

#### I. The private *Volkswagen* factors weigh against transferring the case.

#### 1. The "relative ease of access to sources of proof" factor weighs against transfer.

In considering the relative ease of access to sources of proof, this Court looks to accessibility of witnesses and the accessibility of documents and other physical evidence. *Id.* at *6-8. "When determining the weight and impact of the location of witnesses, this Court looks

at the totality of the circumstances, including but not limited to, 'the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc.'" *Uniloc 2017 LLC v. Apple Inc*., 6-19-cv-00532-ADA, 2020 U.S. Dist. LEXIS 109037, at *32 (W.D. Tex. June 19, 2020) (Albright, J.). Here, many potential and key trial witnesses are in the Western District of Texas, Europe, Canada, or otherwise outside the Southern District of Texas.

TCO AS states that because "nearly all evidence is accessible from Houston, the first factor strongly weighs in favor of transfer." ECF No. 71 at 5. But as this Court has held, the relevant inquiry under Fifth Circuit precedent is the physical location of the documents, not where documents are accessible from. *Fintiv, Inc. v. Apple Inc.,* 6:18-cv000372-ADA, 2019 U.S. Dist. LEXIS 171102, at *12 (W.D. Tex. Sept. 10, 2019) (Albright, J.) (noting that though documents may be equally accessible from both districts, "under current Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor."); *Uniloc,* 2020 U.S. Dist. LEXIS, at *29 (W.D. Tex. June 19, 2020). NCS Multistage primary documents were produced, searched, and collected in Canada. ECF No. 71 at 9. TCO AS themselves admit to being the "sole possessor of certain unique invalidity evidence". ECF. No. 76 at 5. Thus, because relevant documents from NCS's collection come from Canada and TCO AS's "unique invalidity evidence" is possessed by them in Norway, the relative ease of access weighs against transfer.

### 2. The "compulsory process" factor weighs in favor of transfer.

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp*., 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013) (emphasis added). This power only exists over individuals who reside, are employed, or regularly transact business in person within 100 miles of the court. Fed. R. Civ. P. 45(c)(1)(A).

The sole inventor and key non-party witness of the asserted patent who resides in the United States is Travis Harris. Mr. Harris's is employed within 100 miles of the Houston Division of the SDTX. ECF No. 71-4 at 2. He is therefore subject to the absolute subpoena power of the Houston division of SDTX, weighing this factor in favor of transfer.

### 3. The "cost of attendance" factor is neutral.

The convenience of party witnesses is a core consideration under section 1404 analysis. *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. May 22, 2009); 28 U.S.C. § 1404(a) ("For the convenience of parties"). TCO AS first argues that Houston is more convenient because TCO Products and NCS are headquartered in Houston and the majority of relevant witnesses are employed and reside in Houston. ECF No. 71 at 8.

In its response, NCS points out that the majority of witnesses relevant to TCO AS reside in Norway and Canada. ECF No. 74 at 10. Typically, The Fifth Circuit's 100-mile rule states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting Volkswagen I, 371 F.3d at 204–05). However, *In re Genetech. Inc*. further clarifies this rule for foreign parties in that "the '100-mile' rule should not be rigidly applied such that it creates the result presented here." 566 F.3d at 1344. "The witnesses from Europe will be required to travel a significant distance no matter where they testify." *Id*.

Five potential witnesses with relevant information to the allegedly infringing device reside in Norway. ECF. No. 74 at 10. They include, Mr. Brandsdal, designer of the allegedly infringing TDP-PO product and CEO of TCO AS, and employees of TCO AS including Mr. Tepu, Mr. Melhus, and Mr. Erikson. *Id.* NCS also points out the five remaining inventors of the '445 Patent who are all non-party witnesses that reside in Canada. *Id*. at 7. These potential

witnesses are traveling no matter where the trial takes place. Although the convenience of an airport hub in Houston cannot be denied, as stated in a related case. *In re Genentech* dictates that the potential marginal added distance between Waco and Houston in relation to Canada and Norway is minute and should not significantly affect the cost or convenience of attendance, if at all. *NCS Multistage v. Nine Energy Serv.*, No. 6:20-CV-00277-ADA, 2021 U.S. Dist. LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021); 566 F.3d at 1344.

Lastly, NCS points out multiple potential non-party witnesses in this District. *Id*. at 5. Importantly, TCO AS's customer base is installed in "just about every basin in Texas," thus, they are substantially based in this District. ECF No. 62-2 at 37. Further, NCS argues that Waco would be a more convenient venue for these non-party witnesses because of Waco's proximity to TCO AS's customer base and Waco's location in this District and the Court agrees. *Id*. at 5.

By weighing the convenience of the potential witnesses in Houston and in West Texas and finding that the cost of attendance for foreign witnesses is neutral, this factor is neutral.

### 4. The "all other practical problems" factor weighs against transfer.

"A parallel action in this District involving the same patent weighs heavily in the transfer analysis." *SynKloud Techs., LLC v. Dropbox, Inc*., 6:19-cv-00525-ADA, 2020 U.S. Dist. LEXIS 84958, at *10 (W.D. Tex. May 14, 2020) (Albright, J.). "Though this factor is not dispositive, judicial economy favors having the infringement of the same patent considered by one judge." *Id.* On July 9th, 2020, NCS filed an additional suit in this Court asserting the '445 Patent against Nine Energy Service. *See* Civil Action No. 6-20-cv-00277-ADA. All of the claims asserted in this case are also asserted in the *Nine* case. ECF No. 74 at 12. Thus, in this case as in the related case, "[b]ecause of the pendency of the related cases in the district, this factor weighs against transfer." *NCS v. Nine*, 2021 U.S. Dist. LEXIS 60219, at *9.

## II. The public *Volkswagen* factors are neutral.

### 5. The "administrative difficulties flowing from court congestion" factor weighs against transfer.

Court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech*, 566 F.3d at 1347 (applying Fifth Circuit law). Considerable progress has been made in this case. The Court is less than a year from the scheduled trial date of March 6, 2022. ECF No. 45 at 2. Further, the *Markman* Hearing for this case is scheduled for June 4, 2021, only a month from the receipt of the motion to transfer. ECF 45 at 2. These completed administrative tasks should outweigh the 0.1 month difference in time resolution between the Houston district and the Waco district that TCO AS refers to. ECF No. 71 at 10. Taking the administrative burden put on the Houston district for tasks already complete in the Waco district into consideration, this factor weighs against transfer.

### 6. The "Localized interest" weighs in favor of transfer.

The Fifth Circuit has reasoned that this factor is tied to the burdens of jury service and that the burdens of serving on a jury "'ought not to be imposed upon the people of a community which [have] no relation to the litigation.'" *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Both WDTX and SDTX assemble venire panels from individuals residing in the counties that compose a division. *See Final Order Re: Jurors in WDTX* at 1-2 (W.D. Tex. Mar. 21, 2017) (C.J. Garcia); *In re Amended Jury Plan*, Order2013-06, at § 5 (S.D. Tex. Jul. 5, 2013). The local interests of the SDTX division derive from the individuals who work directly for NCS and TCO AS and the economic impact each company has on Houston. *Id*. The local interests of the WDTX derive from the indirect impact both NCS and TCO AS's have on the WDTX through their customers in the Permian Basin and the Eagle Shale Ford Play. Balancing the two, the jurors in Houston are more

14

directly impacted by the activity of both NCS and TCO AS, weighing this factor in favor of transfer.

## IV. Conclusion

The following table summarizes the Court's conclusions for each factor:

| Factor | Against Transfer | For Transfer |
|---|---|---|
| Relative ease of access to sources of proof | X | |
| Compulsory process | | X |
| Cost of attendance | Neutral | Neutral |
| All other practical problems | X | |
| Administrative difficulties flowing from court congestion | X | |
| Localized Interest | | X |
| Familiarity of the forum with the law that will govern the case | N/A | N/A |
| Problems associated with conflict of law | N/A | N/A |

As such, finding that the balance of factors weighs against transfer leading to the conclusion that the Southern District of Texas is not a clearly more convenient venue. Accordingly, the Court finds that Defendant's Motion to Dismiss and Motion to Transfer the case pursuant to 28 U.S.C. § 1404(a) are both and hereby are **DENIED**.

**SIGNED** this 28th day of May, 2021.

ALAN D ALBIGHT
UNITED STATES DISTRICT JUDGE