# EXHIBIT A

**TIN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| NCS MULTISTAGE INC.<br>NCS MULTISTAGE LLC.,<br><br>Plaintiffs,<br><br>v.<br><br>TCO AS,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 6:20-cv-00622-ADA |

**DEFENDANT TCO AS'S FINAL INVALIDITY CONTENTIONS**

Pursuant to the Court's Order Governing Proceedings (Dkt. No. 25) and the Joint Scheduling Order (Dkt. No. 99), Defendant TCO AS ("TCO AS") provides its Final Invalidity Contentions ("Final Invalidity Contentions") to Plaintiffs NCS Multistage, Inc. and NCS Multistage, LLC ("NCS").

## I. Introduction

In its First Supplemental Preliminary Infringement Contentions dated September 3, 2021, NCS has asserted claims 14 (which depends from claims 1 and 8), 15, 22-25, 27-31, 36-43, 46, 50-53, 55-57 (the "Asserted Claims") U.S. Patent No. 10,465,445 (the "'445 Patent"). TCO AS contends that each of the Asserted Claims are invalid under at least 35 U.S.C. §§ 101, 102, 103, and/or 112 and for all the reasons described in further detail below. These Final Invalidity Contentions include Exhibits A-1 to A-60. As explained in more detail below, TCO AS contends that the prior art references and documents charted in Exhibits A-1 to A-60 anticipate or render obvious, either alone or in combination, one or more of the Asserted Claims.

In the event that NCS identifies patent claims not asserted in NCS's Final Infringement Contentions, TCO AS reserves the right to supplement these Final Invalidity Contentions and seek

relief from the Court. Discovery remains ongoing, and TCO AS reserves the right to seek leave from the Court to amend these contentions in view of new information discovered after the Final Invalidity Contentions are served, including information received from third parties relating to the identified prior art.

## II. Person of Ordinary Skill of the Art ("POSA")

In view of the subject matter of the '445 Patent, a POSA has a Bachelor's degree, Master's degree, and/or Ph.D. in Mechanical Engineering or Petroleum Engineering, or at least five years of experience working with plugs and floatation of well casing.

## III. The '445 Patent is Invalid Pursuant to 35 U.S.C. §§ 102 and/or 103

The prior art references and documents cited herein disclose all of the limitations of the Asserted Claims, either explicitly and/or inherently, and may also be relied upon to show the state of the art in the relevant timeframes. Accordingly, each of the limitations of the Asserted Claims is invalid in view of at least the prior art references and documents cited herein pursuant to 35 U.S.C. §§ 102 and/or 103, either alone or in combination with one or more of the other cited prior art references.

### a. Identification of Prior Art

TCO AS currently contends that the following prior art references described and charted in Exhibits A-1 to A-60 either anticipate or render obvious, either alone or in combination, one or more of the Asserted Claims. Any citation to a printed publication or other reference describing a prior art system in these Final Invalidity Contentions, including the Exhibits A-1 to A-60, should also be construed to include a reference to the prior art system itself. Each listed document or item became prior art at least as early as the dates set forth herein. The claim charts attached as Exhibits A-1 to A-60 specify where the limitations of the Asserted Claims are disclosed in the prior art and documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO.

Specifically, as shown by Exhibits A-1 to A-60, each claim chart is directed to one prior art reference or documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO and the ’445 Patent and details where the limitations of the Asserted Claims from the ’445 Patent are disclosed in said documents.

TCO AS’s reliance on each prior art reference or documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO identified throughout the Final Invalidity Contentions, including in the tables below, includes the reference itself, anything incorporated by the reference, any system embodying the reference, and any testimony by those with knowledge of the reference, such as named authors and inventors.

Each Asserted Claim is invalid because it fails to meet one or more requirements for patentability. Each of the foregoing listed prior art references, the underlying work, and/or the underlying apparatus or method qualifies as prior art under one or more subsections of 35 U.S.C. §§ 102 or 103. Exhibits to TCO AS’s Preliminary Invalidity Contentions are as follows:

A-1. U.S. Patent 7,661,480 to Al-Anazi (“Al Anazi”)

A-2. Frank Allen, et al., Extended-Reach Drilling: Breaking the 10-km Barrier (BP Exploration Operation Co. Ltd. 1997) (“Allen 1997”)

A-3. Int. Pub. No. WO2009116871A1 to Brandsdal et al. (“Brandsdal 2009”)

A-4. U.S. Pat. No. 6,634,430 to Dawson et al. (“Dawson 2003”).

A-5. U.S. Pat. No. 4,512,491 to DeGood et al. (“DeGood 1985”)

A-6. WO1991012451A1 to Degraaf et al. (“Degraaf 1991”)

A-7. U.S. Pat. No. 2,756,828 to Deily et al. (“Deily 1956”)

A-8. U.S. Pat. No. 5,188,182 to Echolas et al. (“Echolas 1993”)

A-9. U.S. Pat. No. 3,831,680 to Edwards et al. (“Edwards 1974”)

A-10. U.S. Pat. 9,624,750 to Entchev, et al. (“Entchev 2017”)

A-11. U.S. Pat. 8,820,437 to Ervin, et al. ("Ervin 2014")

A-12. U.S. Pat. 244,042 to Farrar ("Farrar 1881")

A-13. U.S. 5,050,630 to Farwell & Mundt ("Farwell 1991")

A-14. U.S. Pat. 5,924,696 to Frazier ("Frazier 1999")

A-15. U.S. Pat. 7,287,596 to Frazier & Chapman ("Frazier 2007")

A-16. U.S. Pat. 7,708,066 to Frazier ("Frazier 2010")

A-17. U.S. Pat. 8,813,848 to Frazier ("Frazier 2014")

A-18. U.S. Pat. 9,194,209 to Frazier ("Frazier 2015")

A-19. U.S. Pat. 6,334,488 to Freiheit ("Freiheit 2002")

A-20. WO 2003/052239 to Friend, et al. ("Friend 2003")

A-21. U.S. Pat. 5,479,986 to Gano, et al. ("Gano 1996)

A-22. U.S. Pat. 5,685,372 to Gano ("Gano 1997")

A-23. U.S. Pat. 7,963,342 to George ("George 2011")

A-24. U.S. Pat. 6,472,068 to Glass, et al. ("Glass 2002")

A-25. U.S. Pat. 6,561,275 to Glass, et al. ("Glass 2003")

A-26. U.S. Pat. 7,513,311 to Gramstad, et al. ("Gramstad 2009")

A-27. U.S. Pat. 7,963,340 to Gramstad, et al. ("Gramstad 2011")

A-28. U.S. Pat. 4,664,184 to Grigar ("Grigar 1987")

A-29. U.S. Pat. 7,624,796 to Hassel-Sorensen ("Hassel 2009)

A-30. U.S. Pat. 7,117,946 to Herr ("Herr 2006")

A-31. U.S. Pat. 6,672,389 to Hinrichs ("Hinrichs 2004")

A-32. U.S. Pat. 7,673,689 to Jackson, et al. ("Jackson 2010")

A-33. U.S. Pat. 5,996,696 to Jeffree, et al. ("Jeffree 1999")

A-34. U.S. Pat. 3,599,713 to Jenkins ("Jenkins 1971")

A-35. U.S. Pat. 7,789,162 to Keller, et al. ("Keller 2010")

A-36. U.S. Pat. 7,455,116 to Lembcke, et al. ("Lembcke 2006")

A-37. U.S. Pat. 4,691,775 to Lustig & Ellis ("Lustig 1987")

A-38. U.S. Pat. 2,565,731 to Luther ("Luther 1951")

A-39. Oil and Gas Online, Single MagnumDiskTM (June 21, 2011) ("Magnum Oil Tools 2011").

A-40. Owen Oil Tools, Magnum Ported Underbalance Sub (Core Lab September 2012) ("Magnum Oil Tools 2012")

A-41. U.S. Pat. 5,117,915 to Mueller, et al. ("Mueller 1992")

A-42. U.S. Pat. 1,884,165 to Otis ("Otis 1932")

A-43. Owen Oil Tools, Surge Tool, Underbalance Sub (Core Lab June 2002) ("Owen Oil Tools 2004")

A-44. Rogers et al., Buoyancy Technology Used Effectively in Casing Running Operations to Extend Lateral Stepout, SPE/IADC 148541 (Oct. 24, 2011) ("Rogers 2011")

A-45. U.S. No. 5,829,526 to Rogers, et al. ("Rogers 1998")

A-46. U.S. Pub. No. 2009/0020290 to Ross, et al. ("Ross 2009")

A-47. Shaker et al., Implementation of New Technologies for Oil and Gas Industry, SPE 88738 (Oct. 2004) ("Shaker 2004")

A-48. Can. Pub. No. CA2670218 to Sherman, et al. ("Sherman 2010")

A-49. U.S. Pub. No. 4,553,559 to Short ("Short 1985")

A-50. U.S. Pub. No. 2009/0056955 to Slack ("Slack 2009")

A-51. U.S. Pub. No. 2003/0168214 to Sollesnes ("Sollesnes 2003")

A-52. U.S. Pat. No. 4,813,481 to Sproul et al. ("Sproul 1989")

A-53. U.S. Pat. No. 7,950,409 to Stokes et al. ("Stokes 2011")

A-54. U.S. Pat. No. 6,397,950 to Streich et al. ("Streich 2002")

A-55. Can. Pat. No. 2469251 to Sundholm et al. ("Sundholm 2010")

A-56. TCO TDP-PO 500 x 300 Drawing, TCO AS (July 30, 2012) ("500x300 TDP-PO Plug")

A-57. TCO TDP PoP 572 x 375 Drawing, TCO AS (Drawing No. 1018-12-001) ("572x375 TDP-PO Plug")

A-58. U.S. Pat. No. 4,658,902 to Wesson et al. ("Wesson 1987")

A-59. WO 2010120774 ("Entchev 2010")

A-60. Documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO, identified in the chart.

Although TCO AS has identified at least one citation per limitation for most of the references, each and every disclosure of the same limitation in the same reference is not necessarily identified. Rather, in an effort to focus the issues, TCO AS has generally cited representative portions of identified references or documents, even where a reference or document may contain additional support for a particular claim element. In addition, persons of ordinary skill in the art generally read a prior art reference or document produced by TCO AS demonstrating the prior use and sale of the TDP-PO as a whole and in the context of other publications, literature, or supporting documentation. Thus, to understand and interpret any specific statement or disclosure within a prior art reference or document, such persons of ordinary skill in the art would rely on other information within the reference or document, along with other publications and their general scientific knowledge. TCO AS may rely upon uncited portions of the prior art references and on other publications and expert testimony to provide context, and as aids to understanding and interpreting the portions that are cited. TCO AS may also rely on the prior art of record for any permissible purpose, including prior art cited on the face of the '445 Patent and/or discussed in the '445 Patent's specification or prosecution history, including to show that the '445 Patent is either

anticipated or obvious, to show the state of the art, to show motivation to combine a reference with one or more other references, and to show the proper scope of the Asserted and Non-Asserted Claims. TCO AS may also rely on uncited portions of the prior art references, documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO, other disclosed publications, and the testimony of experts to establish that a person of ordinary skill in the art would have been motivated to modify or combine certain of the cited references so as to render the claims obvious. Further, by mapping the claim language of the Asserted Claims to the prior art references and documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO, TCO AS neither implies nor admits that the claim language satisfies 35 U.S.C. § 112 or that the claim language has patentable weight.

**b. Anticipation Pursuant to 35 U.S.C. § 102**

A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention. *See Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). A single prior art reference may anticipate without disclosing a feature of the claimed invention if such feature is necessarily present, or inherent, in that reference. *See id.*

Some or all of the Asserted Claims are invalid as anticipated under 35 U.S.C. § 102 under the prior art references and documents identified above and in the claim charts included in Exhibits A-1 to A-60, which identify specific examples of where limitations of the Asserted Claims are found in the prior art references or produced documents. As explained above, the cited portions of prior art references or documents identified in the attached claim charts are exemplary only and representative of the content and teaching of the prior art references, and should be understood in the context of the reference as a whole and as they would be understood by a person of ordinary skill in the art.

**c. Obviousness Pursuant to 35 U.S.C. § 103**

Each anticipatory prior art reference or document produced by TCO AS demonstrating the prior use and sale of the TDP-PO, either alone or in combination with other prior art, also renders the Asserted Claims obvious to one of ordinary skill in the art. To the extent any limitation is deemed not to be exactly met, either explicitly or inherently, by an item of prior art listed above and in Exhibits A-1 to A-60, then any purported differences are such that the claimed subject matter as a whole would have been obvious to one skilled in the art at the time of the alleged invention, in view of the state of the art and knowledge of those skilled in the art. In particular, each anticipatory prior art reference on its own renders obvious the claimed inventions and also may be combined with (i) information known to persons skilled in the art at the time of the alleged invention and/or (ii) any of the other anticipatory prior art references or documents. The item of prior art would, therefore, render the relevant claims invalid for obviousness under 35 U.S.C. § 103.

In addition, the references and documents identified above render one or more Asserted Claims obvious when the references are read in combination with each other, and/or when read in view of the state of the art and knowledge of those skilled in the art. Each and every reference and document identified is also relevant to the state of the art at the time of the alleged invention of the '445 Patent. Any of the references disclosed above may be combined to render obvious (and therefore invalid) each of the Asserted Claims. TCO AS may rely upon all or a subset of the references or documents identified above, for purposes of obviousness depending on the Court's claim construction, positions taken by Plaintiff during this case, and further investigation and discovery. Combining the references disclosed herein and in Exhibits A-1 to A-60 would have been obvious, as the references identify and address the same technical issues and suggest very similar solutions to those issues. TCO AS reserves the right to amend or supplement these Final

Invalidity Contentions to identify additional reasons that combining the references would be obvious to one of ordinary skill in the art, including with expert testimony to be disclosed in accordance with the Joint Scheduling Order entered by the Court and the rules of this Court.

The Supreme Court clarified the standard for what types of inventions are patentable. *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1731 (2007) ("the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results"). In particular, the Supreme Court emphasized that inventions arising from ordinary innovation, ordinary skill, or common sense should not be patentable. *See id.* at 1732,1738-39, 1742-43, 1746. Because the '445 Patent simply combines elements well known in the art in a straightforward fashion to achieve a well-known and obvious result and thus yield no more than one skilled in the art would expect from such combinations, the Asserted Claims are obvious. The Asserted Claims are therefore invalid under 35 U.S.C. § 103 because they do nothing more than combine known techniques and apparatuses according to their known and ordinary uses to yield predictable results.

The Supreme Court further held that "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill . . . ." *See id*. at 1740. Moreover, no showing of a specific motivation to combine prior art is required to combine the references disclosed above and in the attached chart, as each combination of art would have no unexpected results, and at most would simply represent a known alternative to one

of skill in the art. *See id.* at 1739- (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach). Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742. Nevertheless, in addition to the information contained elsewhere in these contentions, TCO AS hereby identifies motivation and reason to combine the cited art

Here, one or more combinations of the prior art references (or documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO) identified above would have been obvious to one of ordinary skill in the art because these references would have been combined using: known methods to yield predictable results; known techniques in the same way; a simple substitution of one known, equivalent element for another to obtain predictable; and/or a teaching, suggestion, or motivation in the prior art generally results. For example, casing floatation is a well-known, proven technology that has been used for decades to extend the lateral reach of a wellbore in order to reach recoverable reserves that were previously unreachable using conventional methods. Further, it is well known that early casing floatation operations, the buoyant air chamber was created by using retrievable plugs to seal the chamber from the remainder of the casing. Further, retrievable plugs employed in early floating operations needed to be removed from the casing string after the total casing depth was reached, but before the cementing operations were performed. The removal required wireline retrieval, explosives, milling, spearing, drop bars, or drilling out to open the plug. Additionally, the added time contributed to drilling fluid developing gel strength, making it much more difficult to remove the drilling fluid. Thus, the removal of plugs could be dangerous and expensive, creating a problem for skilled artisans to resolve. Accordingly,

a person of skill in the art would have been motivated to combine or adapt known or familiar methods in the art to make, for example, the plug removal safer and less expensive.

In addition, it would have been obvious to one of ordinary skill in the art to try combining the prior art references identified above because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same or similar fields. In this case, the prior art references are directed to the technological field of methods and apparatus for sealing well casings, including float tools used for casing flotation. Furthermore, the various combinations of the prior art references identified below would have been obvious to one of ordinary skill in the art because the combination represents the known potential options with a reasonable expectation of success. For example, it was well-known in the prior art that when determining whether to use floatation assemblies, operators must take into account: (1) wellbore geometry, (2) friction coefficient, (3) rig equipment, (4) fluid returns, (5) and casing collapse rating. Further it was well-known that when the casing has reached its desired depth, the rupture disc assemblies may be ruptured by applying sufficient mechanical force or pressure, thus shattering the assembly allowing the smaller pieces to flush to the surface, thereby avoiding the need to mechanically retrieve any components. *See, e.g.*, Rogers at 1-2, 4; Frazier at 1:10-2:8.

As a result, one skilled in the art would have known to combine or modify references that described known systems and methods which one of skill in the art would have recognized as offering improvements to solutions at that time. Each of the prior art references and documents identified herein and in Exhibits A-1 to A-60 described systems and methods that were known to offer such improvements, and, accordingly, one of skill in the art would have been motivated to combine or modify the references as described herein.

Additional evidence that there would have been a motivation to combine the prior art references identified above includes the interrelated teachings of multiple prior art references; the effects of demands known to the design community or present in the marketplace; the existence of a known problem for which there was an obvious solution encompassed by the Asserted Claim; the existence of a known need or problem in the field of endeavor at the time of the purported invention(s). *See, e.g.*, Entchev at 3:13-4:7 ("…Milling and drilling are expensive, risky, and time consuming operations."

Thus, the motivation to combine the teachings of the prior art references disclosed herein is found in the references themselves and: (1) the nature of the problem being solved; (2) the express, implied and inherent teachings of the prior art; (3) the knowledge of persons of ordinary skill in the art; (4) the predictable results obtained in combining the different elements of the prior art; (5) the predictable results obtained in simple substitution of one known element for another; (6) the use of a known technique to improve similar devices, methods, or products in the same way; (7) the predictable results obtained in applying a known technique to a known device, method, or product ready for improvement; (8) the finite number of identified predictable solutions that had a reasonable expectation of success; and (9) known work in various technological fields that could be applied to the same or different technological fields based on design incentives or other market forces.

In particular, TCO AS contends that the Asserted Claims would have been obvious in view of the prior art references and documents identified herein. For example, Exhibits A-1 to A-60 include exemplary claim charts that describe how the Asserted Claims would have been anticipated. Each of these primary references teaches all of the limitations of the Asserted Claims. To the extent any claim limitations are found to be missing from the primary references, it would

have been obvious to one of ordinary skill in the art to add the missing limitation based on the corresponding disclosure of that limitation in Exhibits A-1 to A-60.

The obviousness combinations set forth herein reflect the May 24, 2021 Joint Claim Construction Statement (Dkt. 78), this Court's July 6, 2021 Claim Construction Order, as well as the Court's Claim Construction Orders in the *NCS Multistage et al v. Nine Energy Serv.* litigation (6:20-cv-00277-ADA) (Dkts. 56 and 90). TCO AS's present understanding of the potential scope of the Asserted Claims that Plaintiff appears to be advocating and should not be seen as TCO AS's acquiescence to Plaintiff's interpretation of those claims to the extent they contradict this Court's previous Claim Construction Orders.

Plaintiff has not identified what elements or combinations it alleges were not known to one of ordinary skill in the art at the time of the alleged inventions. Therefore, for any claim limitation that Plaintiff alleges is not disclosed in a particular prior art reference, TCO AS reserves the right to assert that any such limitation is either inherent in the disclosed reference or obvious to one of ordinary skill in the art at the time in light of the same, or that the limitation is disclosed in another of the references disclosed herein and in combination would have rendered the Asserted Claims obvious.

Further, more reasons exist to combine one or more of the references included in these Invalidity Contentions with each other. Generally, reasons to combine any of these references with others exist within the references themselves, as well as within the knowledge of those of ordinary skill in the art at the relevant time. For example, many of these references identify and address the same technical issues and suggest very similar solutions to those issues in the field of well casings. Moreover, several of these references cross-reference and/or discuss one another, thereby providing an explicit motivation to combine such references and further illustrating the close

technical relationship among this group of references. If, and to the extent that Plaintiff challenges the correspondence of any of these references with respect to particular elements of the Asserted Claims, TCO AS reserves the right to supplement these Preliminary Invalidity Contentions to identify additional motivations to combine particular references with one another to the extent necessary. TCO AS may rely upon a subset of the references or all of the references depending upon the Court's claim construction and further investigation.

TCO AS may rely on cited or uncited portions of the prior art, other documents, witness testimony, and expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine the prior art so as to render the claims invalid as obvious. In the event Plaintiff challenges the motivation to combine particular prior art references, TCO AS reserves the right to supplement these contentions to further specify the motivation to combine the prior art to the extent necessary.

In particular, the Asserted Claims are rendered obvious pursuant to 35 U.S.C. § 103 in view of at least the following combinations of references:

- Entchev 2017, alone;
- Entchev 2010, alone
- Entchev in view of Lembcke;
- Entchev 2017, 2010 in view of Frazier 2015
- Entchev 2017, 2010 in view of Sproul
- Entchev 2017, 2010 in view of Frazier 2015 and Rogers 1998 and/or 2011
- Entchev 2017, 2010 in view of Sproul and Rogers 1998 and/or 2011
- Entchev 2017, 2010 in view of Frazier 2015, Sproul and Rogers 1998 and/or 2011
- Rogers in view of the TDP-PO Plug 572 x 375 and/or TDP-PO Plug 500x300;

- TDP-PO Plug 572 x 375 alone
- TDP-PO Plug 500x300 alone
- TDP-PO Plug 572 x 375 and TDP-PO Plug 500x300
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Frazier 2015
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Sproul
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Frazier 2015 and Rogers 1998 and/or 2011
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Sproul and Rogers 1998 and/or 2011
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Frazier 2015, Sproul and Rogers 1998 and/or 2011
- TDP-PO Plug 572 x 375 or TDP-PO Plug 500x300 in view of Keller 2010
- Rogers in view of Entchev 2010 and/or 2017;
- Rogers in view of Entchev 2010/or and 2017 and Lembcke;
- Frazier 1999, 2007, 2010, 2014, and/or 2015 in view of Rogers 1998 and/or 2011
- Frazier 1999, 2007, 2010, 2014, and/or 2015 in view Keller 2010
- Gramstad 2011 and/or 2009 in view of Hinrichs 2004
- Gramstad 2011 and/or 2009 in view Entchev 2017, 2010
- Keller 2010 in view of Entchev 2017 or 2010
- Documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO.

In addition to the specific combinations of prior art and the specific combinations of groups of prior art disclosed above, TCO AS reserves the right to rely on any other combination of any

prior art references disclosed herein. TCO AS further reserves the right to rely upon combinations disclosed within the prosecution history of the references cited herein.

In addition to the disclosed obviousness references and other prior art references disclosed herein, TCO AS may also rely on background materials to demonstrate the state of the art, which is relevant to obviousness of the Asserted Claims. The concepts claimed in the ’445 Patent were prevalent in the field of well casings, and well-known to ordinary artisans long before the earliest alleged conception dates of the ’445 Patent. While there are too many examples of background materials to list (and the local rules impose no obligation to disclose materials used purely for background or state of the art), representative examples include all references cited in the ’445 Patent and respective prosecution history, all references cited and charted herein and within Exhibits A-1 to A-60, and all references cited within the references cited and charted herein and within Exhibits A-1 to A-60. The long-known concepts recited in these and similar background materials describe the background knowledge of one of skill in the art, which taken alone or in combination with prior art references described herein, render the Asserted Claims obvious.

TCO AS’s contention that the references in this section, in various combinations, render the Asserted Claims obvious pursuant to 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the Asserted Claims pursuant to 35 U.S.C. § 102.

**d. Secondary Consideration of Non-Obviousness**

TCO AS is presently unaware of any evidence of secondary considerations that are relevant to the ’445 Patent. Plaintiff has not yet cited any secondary considerations of non-obviousness. To the extent that Plaintiff asserts or relies on any evidence of alleged secondary considerations, evidence will also establish or rebut any alleged or claimed secondary considerations in full. As

such, if and in the event Plaintiff cites to, asserts, or relies on evidence of any alleged secondary considerations, TCO AS reserves the right to supplement these contentions to address the same.

## IV. Asserted Claims 14-15, 22-25, 27, 29, and 56-57 of the ’445 Patent Are Invalid Pursuant to 35 U.S.C. § 101

TCO AS identifies the following claim term “a rupturing force greater than the rupture burst pressure” (Claims 14-15, 22-25, 27, 29, and 56-57) as being only susceptible to one reasonable interpretation and that interpretation results in a nonsensical construction of the claims as a whole rendering the claims invalid as inoperative, and thus failing to comply with the utility requirements pursuant to 35 U.S.C. § 101. Claims 22, 23, 24, 25, and 27 are unpatentable subject matter pursuant to 35 U.S.C. § 101. TCO AS expressly reserves the right to modify this identification of lack of enablement claim terms in view of any amendments to NCS’s preliminary infringement contentions.

## V. Reservation of Rights

TCO AS’s Final Invalidity Contentions are based on information known to it at this time with respect to the Asserted Claims, and are necessarily preliminary and may require subsequent amendment, modification, and/or supplementation, including as required and permitted by Local and Federal Rules.

Moreover, fact discovery is ongoing and TCO AS has not obtained deposition testimony of any of the named inventors of the ’445 Patent or any third party. TCO AS expects further discovery will reveal additional prior art, including related disclosures and corresponding evidence for many of the prior art references identified below. As such, TCO AS has not yet completed its investigation, discovery or analysis of matters relating to the validity or enforceability of the Asserted Claims.

TCO AS's Final Invalidity Contentions should not be taken to mean that: (i) TCO AS agrees with Plaintiff's bases for infringement; (ii) TCO AS agrees with Plaintiff regarding the scope of any of the Asserted Claims; (iii) TCO AS agrees with Plaintiff's claim constructions advanced directly or implicitly by Plaintiff's infringement contentions or in any other pleading, discovery request or response, or written or verbal communication with Defendant; or (iv) TCO AS agrees or believes the claims at issue are amenable to a meaningful construction or satisfy the requirements of 35 U.S.C. § 112. In addition, nothing in these Final Invalidity Contentions shall be treated as an admission that any of TCO AS's accused products meet any limitation of the Asserted Claims. Any attempt by Plaintiff to use these Final Invalidity Contentions to support any allegation of infringement would be misleading and factually inaccurate.

Except as otherwise stated herein, these Final Invalidity Contentions are based on the alleged priority date of the '445 Patent identified on the face of the patent. To the extent Plaintiff asserts entitlement to an effective priority date prior to the filing of the application(s) that ultimately issued as the '445 Patent, the TCO AS reserves the right to amend these Final Invalidity Contentions. Further, nothing in these Final Invalidity Contentions constitutes an admission concerning the priority date, conception date, or reduction to practice of the Asserted Claims of the '445 Patent. TCO AS reserves the right to challenge the priority date of the '445 Patent, and indeed asserts herein that the '445 Patent is not entitled to the priority date identified on the face of the '445 Patent.

Regarding the prior art references and documents discussed herein, TCO AS has identified exemplary portions of the references and documents that disclose the claimed limitations of each of the Asserted Claims, though such portions are not meant or intended to be exhaustive. The references may contain additional support for particular claim limitations. A person of ordinary

skill in the art would have understood and interpreted the cited passages in the context of the prior art references as a whole, as well as in the context of the state of the art. In addition, the cited references and documents may be combined and modified in a number of ways to achieve the claimed methods and/or devices recited in the Asserted Claims. The TCO AS expressly reserves the right to rely on the entirety of the references identified, including any uncited portions of the prior art references, other documents or references that may be identified, and expert testimony to provide further context or to aid in the understanding of the cited portions of the references.

TCO AS is not aware of how Plaintiff may attempt to distinguish the prior art cited herein, and TCO AS reserves the right to identify other references that would have supplied the allegedly missing elements to render the Asserted Claims obvious or to counter alleged evidence of secondary indicia of non-obviousness. Plaintiff has not identified what limitations of the Asserted Claims they allege were not known to one skilled in the art at the time of the alleged inventions recited in the Asserted Claims. For any claim limitation that Plaintiff alleges is not disclosed in a prior art reference or documents produced by TCO AS demonstrating the prior use and sale of the TDP-PO, TCO AS reserves the right to assert that such limitation is either inherent in the reference or would have been obvious to one skilled in the art in light of the same, or that the limitation is disclosed in one or more prior art references and in combination would have rendered the Asserted Claims obvious. Additionally, the obviousness contentions set forth herein should not be construed to suggest that any reference is not anticipatory by itself.

TCO AS further reserves the right to supplement its production and Invalidity Contentions should Defendant identify or otherwise appreciate additional references. TCO AS additionally incorporates, in full, all prior art references cited in the ’445 Patent as well as any related patents and/or applications and their respective prosecution histories, whether the related patents and/or

applications were filed in the United States or in a foreign country. TCO AS further incorporates by reference any and all grounds for invalidity or invalidity contentions submitted, provided, or exchanged by any party or third party involving the ’445 Patent in any *Inter Partes* review, post grant review, District Court or Federal Circuit lawsuit, or any other administrative proceeding, including any and all references cited or relied upon therein.

Dated: September 21, 2021

*/s/ Jonathan R. Spivey*
Jonathan R. Spivey
Texas Bar No. 24002989
jspivey@polsinelli.com
LaTasha M. Snipes
Texas Bar No. 24072504
tsnipes@polsinelli.com
Enes Ovcina
Illinois Bar No. 6325437
New York Bar No. 5096797
*Admitted Pro Hac Vice*
eovcina@polsinelli.com
POLSINELLI, PC
1000 Louisiana St., Suite 6400
Houston, Texas 77002
(713) 374-1600 (Office)
(713) 374-1601 (Facsimile)

*Attorneys for Defendant TCO AS*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021 a copy of the foregoing was served via email to Plaintiffs’ counsel of record.

*/s/ Jonathan R. Spivey*
Jonathan R. Spivey