**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NCS MULTISTAGE INC. <br> NCS MULTISTAGE LLC., <br><br> Plaintiffs, <br><br> v. <br><br> TCO AS, <br><br> Defendant. | § <br> § <br> §    CIVIL ACTION NO. 6:20-cv-00622-ADA <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**JOINT SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

Pursuant to the Court's September 28, 2021 email, Plaintiffs NCS Multistage Inc. and NCS Multistage LLC ("Plaintiffs" or "NCS") and Defendant TCO AS ("Defendant" or "TCO AS") jointly submit this supplemental claim construction brief regarding the term "disengage from sealing engagement," for U.S. Patent No. 10,465,445 limited to two pages of briefing per side. *See* Ex. A at 1. This term appears in claims 28 and 50. The parties previously agreed to the plain and ordinary meaning of this term (see Dkt. No. 78). However, in *NCS Multistage Inc. v. Nine Energy Service, Inc.*, Civil Action No. 6:20-cv-00277 ("Nine Litigation"), the Court entered a supplemental construction of this term. Nine Litigation, Dkt. No. 90 at 1 (attached hereto as Ex. B). In the Nine Litigation, the Court construed the term "disengage from sealing engagement" to mean "before rupturing, move the rupture disc downhole relative to the region." *Id*. For the reasons provided in the Parties' respective sections, Plaintiffs request that the Court adopt the Nine Litigation construction for the term "disengage from sealing engagement" in this case (see Section I) and Defendant requests that the Court construe the term to mean "release a substantially fluid-tight seal." (see Section II).

I.      NCS'S POSITION

The term "disengage…from sealing engagement" has already been construed by the Court in the co-pending Nine Litigation as "before rupturing, move the rupture disc downhole relative to the region." Ex. B (Nine Litigation, Dkt. 90) at 1–2. NCS proposed this construction in the Nine Litigation and contends that construction is correct and should apply in this suit for all the reasons explained in NCS's *Markman* brief in the Nine Litigation (attached hereto as Ex. C) and the findings in the Court's Supplemental Claim Construction Order (Ex. B).

TCO proposes the Court ignore or overturn its construction in the Nine Litigation and construe the term "disengage…from sealing engagement" as "release a substantially fluid-tight seal." TCO's construction is the same meaning Nine gave as the "plain and ordinary" meaning. TCO makes the same arguments that Nine did.[1] Like Nine, TCO argues NCS's proposed construction is inconsistent with the Court's construction of "sealing engagement." But there is no inconsistency because the term "disengage…from sealing engagement" is a different term than "sealing engagement" alone. Also, like Nine, NCS believes TCO wants to construe the term to mean the disc can lose its seal by merely rupturing thereby ensnaring more prior art. Both Nine and TCO have mapped this term to the same prior art references that disclose a plug that does not have a disc that moves, but rather a disc that remains stationary and is ruptured by piercing. That interpretation is contrary to the intrinsic record. There is no embodiment in the '445 Patent where the rupture disc ruptures while stationary. In fact, the '445 Patent teaches away from that prior art design. *See* Dkt. 93-1 (the '445 Patent) at 2:3-30, 6:24-35; 11:27-12:6. The Court agreed with this in the Nine Litigation, finding:

---

[1] While Nine proposed the term be given its plain meaning, Nine's interpretation of that term in its invalidity contentions was that the term "disengage…from sealing engagement" means the disc merely has to rupture. Ex. C at 3 (summarizing Nine's position).

> The specification in the '445 Patent teaches: (i) the rupture disc assembly requires less hydraulic pressure because the disc disengages at a lower pressure to accelerate to impact, (ii) the combination of hydraulic pressure accelerating the disc and its impact ensure a complete rupture of the disc, (iii) the disengaging and accelerating of the disc to impact is more precise, whereas merely using hydraulic pressure may cause premature rupture of the disc due to point loading and imperfections in the disc during machining, (iv) when using hydraulic pressure alone each disc would have to be modified to suit a particular hydraulic pressure rating, which is difficult and time consuming, and (v) when using hydraulic pressure alone the disc would have to be thinner, which is difficult to achieve and more likely to prematurely break. '445 Patent at 11:27-12:6. **There is no mention in the '445 Patent where the rupture disc ruptures while stationary.**

Ex. B (Nine Litigation, Dkt. 90) at 1–2.

TCO also alleges that because NCS claimed in its related '315 Patent "causing the rupture disc to move within the first length of tubing" it purposefully left that feature out of the '445 patent claims and cannot now attempt to capture that feature through its construction of "disengage." TCO's position is baseless. Claims routinely use different language to describe the same feature. There is no claim construction doctrine that says a patentee cannot use different words in different claims or patents to describe the same feature.

NCS's proposed construction is the same as the Court's construction in the Nine Litigation, is straightforward, and provides clarity for the jury. That construction is consistent with the specification and the clear advantages of the invention. Accordingly, NCS respectfully requests the Court construe the term "disengage…from sealing engagement" as "before rupturing, move the rupture disc downhole relative to the region."

## II. TCO AS'S POSITION

Defendant's proposed construction of "disengage from sealing engagement" to mean "release a substantially fluid-tight seal" is based on the words used in the specification and this Court's prior construction of "sealing engagement." Plaintiffs' proposed construction of "before rupturing, move the rupture disc downhole relative to the region" is incorrect because it contradicts the Court's construction of "sealing engagement" and conflates a cause (disengaging the sealing engagement) with an effect (moving the rupture disc downhole).

### A. Defendant's Construction Is the Only Proposal Consistent with Court's Prior Construction of Sealing Engagement

For the term "sealing engagement," the Parties agreed with the Court's construction from the Nine litigation to mean "a substantially fluid-tight seal." *See* Dkt. #78 at 1; *see also* Nine litigation Dkt. #56 at 2. U.S. Patent No. 10,465,445 ("the '445 Patent") repeatedly describes the disengagement of the securing mechanism that holds the rupture disc in sealing engagement as a "release." '445 Patent at 9:32-42, 9:67-10:11, 10:41-43, 11:52-55. Thus, the only proper construction in light of the '445 Patent specification and this Court's prior construction is "release a substantially fluid-tight seal."

Plaintiffs' construction would negate the Court's prior construction of "sealing engagement" because Plaintiffs' construction no longer requires a substantially fluid-tight seal. The claim written with the Court's and Plaintiffs' constructions is shown below for comparison:

| Actual Claim Language | Claim with Court's construction of sealing engagement inserted | Claim with Plaintiffs' construction inserted |
|---|---|---|
| "wherein the rupture disc is configured to disengage from sealing engagement when exposed to a pressure…" | "wherein the rupture disc is configured to disengage from [a substantially fluid-tight seal] when exposed to a pressure…" | "wherein the rupture disc is configured to [before rupturing, move the rupture disc downhole relative to the region] when exposed to a pressure…" |

4

NCS argues that they are not disputing the Court's previous construction of sealing engagement. *See* Nine Litigation, Dkt #87 at 4. However, there is no logical way to read the claim with both the Court's prior construction and Plaintiffs' new construction. For example, inserting both the Court's prior construction and the Plaintiff's proposed construction together results in a non-sensical phrase, "wherein the rupture disc is configured to [before rupturing, move the rupture disc downhole relative to the region] [a substantially fluid-tight seal] when exposed to a pressure…." The two constructions are thus in conflict with each other. Given that the Parties and the Court are all in agreement that sealing engagement means a substantially fluid-tight seal, the Court should not adopt a construction that is inconsistent with that construction.

    **B.**    **Plaintiffs' Construction Reads Limitations Into the Claims of the '445 Patent**

"[C]laim construction must begin with the words of the claims themselves." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006). Here, the plain text of the claims does not require: 1) rupturing the disc, 2) movement of the rupture disc downhole or 3) any actions to take place before rupturing. Thus, Plaintiffs' construction improperly imports limitations from the specification that adds an unclaimed temporal requirement ("before rupturing,…") and an unclaimed actions ("rupturing") and ("move the rupture disc downhole").

Tellingly, Plaintiffs expressly claim this downhole movement in other patents related to the '445 Patent," but not in the '445 Patent itself. For example, in U.S. Patent No. 10,883,315 that shares a common specification with the '445 Patent, the claims recite "the securing mechanism releases *causing the rupture disc to move within the first length of tubing*." Ex. D, '315 Patent at 14:28-30 (emphasis added). TCO AS contends that Plaintiffs appreciated the need to recite movement down the tubing separately from disengaging/releasing the secured engagement, and strategically decided not to include this type of limitation in the claims of the '445 Patent. Plaintiffs should not be allowed to add it into the claims via claim construction.

Dated: October 18, 2021                                             Respectfully submitted,

| BLANK ROME LLP | POLSINELLI PC |
|---|---|
| */s/Domingo M. LLagostera*<br>**Domingo M. LLagostera**<br>(*Attorney-in-charge*)<br>State Bar No. 24070157<br>Tel.: (713) 632-8682<br>Fax: (713) 228-6605<br>DLLagostera@BlankRome.com<br>**Russell T. Wong**<br>State Bar No. 21884235<br>RWong@blankrome.com<br>Tel.: (713) 632-8634<br>Fax: (713) 228-6605<br>717 Texas Avenue, Suite 1400<br>Houston, TX 77002<br><br>**Andrew K. Fletcher** (*Admitted pro hac vice*)<br>PA State ID. 75544<br>AFletcher@blankrome.com<br>Tel.: (412) 932-2736<br>501 Grant Street, Suite 850<br>Pittsburgh, PA 15219<br><br>**S. Gregory Herrman** (*Admitted pro hac vice*)<br>DC Bar No. 983114<br>GHerrman@BlankRome.com<br>Tel.: (202) 420-4793<br>**Megan R. Wood** (*Admitted pro hac vice*)<br>DC Bar No. 1024203<br>MWood@blankrome.com<br>Tel.: (202) 420-2753<br>1825 Eye Street NW<br>Washington, DC 20006<br><br>**ATTORNEYS FOR PLAINTIFFS NCS MULTISTAGE INC. AND NCS MULTISTAGE, LLC** | */s/Jonathan R. Spivey*<br>**Jonathan R. Spivey**<br>(*Attorney-in-charge*)<br>Texas Bar No. 24002989<br>jspivey@polsinelli.com<br><br>**LaTasha M. Snipes**<br>Texas Bar No. 24072504<br>tsnipes@polsinelli.com<br><br>**Enes Ovcina** (*Admitted pro hac vice*)<br>Illinois Bar No. 6325437<br>New York Bar No. 5096797<br>eovcina@polsinelli.com<br><br>POLSINELLI, PC<br>1000 Louisiana St., Suite 6400<br>Houston, Texas 77002<br>(713) 374-1600 (Office)<br>(713) 374-1601 (Facsimile)<br><br>**ATTORNEYS FOR DEFENDANT TCO AS** |

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on October 18, 2021, via the Court's CM/ECF system.

<em>/s/ Domingo M. LLagostera</em><br>
Domingo M. LLagostera